Verdict and judgment for plaintiffs. Defendants appealed.
The plaintiffs, as tenants under a lease from John H. McAden, the owner, were in the occupation of a house and lot fronting on Trade Street in Charlotte, pursuing a mercantile business, in the year 1885, while the defendants, similarly engaged, were early in that year in possession of an adjoining lot with like frontage, under a contract of purchase made on 1 July, 1875, with Henry W. Fries, the building on which was consumed by fire in the month of February, 1885.
While the lots belonging, respectively, to said McAden and Fries, to wit: on 1 May, 1875, they entered into a contract, a copy of which is contained in the complaint, and in form is as follows: *Page 146 
"Whereas, John H. McAden, of Charlotte, North Carolina, is owner of a certain lot or parcel of land in said city, fronting on Trade Street and extending back about one hundred and forty feet, and adjoining the property of W. J. Yates and the lot owned by H. W. Fries, of Salem, N.C. on which last-mentioned lot is situated the brick storehouse occupied by W. J. Black, the south wall of said storehouse being built along the dividing line between the said McAden and Fries;
"Now, this agreement, made this 1 May, 1875, between the said John H. McAden and the said H. W. Fries,
"Witnesseth: That the said Fries, for and in consideration of (163) the stipulations and agreement of the said McAden, hereinafter contained, does hereby covenant that the said McAden, his heirs and assigns, may use said south wall of said brick storehouse as the north wall of the storehouse to be erected by the said McAden on his aforesaid lot, and may make such excavations in said wall as may be necessary for the support of the floor of said house: Provided, however, that no injury is done to the building of the said Fries.
"And, provided further, that said wall is not to be torn down without the consent of the parties hereto, their heirs and assigns.
"And in the event of its destruction by any means, nothing herein contained is to be construed as conveying to the said McAden any right or title to the land on which said wall is located.
"And the said McAden, for himself and his heirs above, covenants and agrees to and with the said Fries that he will add to and improve said wall at his own expense, and for the mutual benefit of himself and the said Fries, so as to make it serve as the north wall of his aforesaid storehouse, which is to have a basement ten feet deep, and to extend back from Trade Street one hundred feet, the third story to extend only fifty feet back, and the front of said wall to be about ________ feet high, all which improvements are to be made in a workmanlike manner, and of good material.
"And the said McAden does further agree that the said Fries, his heirs and assigns, may use said wall in such manner as may be proper and necessary to support or strengthen the building he or they may erect in the place of the one now on said lot; and that he will, at his own expense, repair any injury that may be done to said wall by reason of said addition made thereto. H. W. FRIES." The contract of sale of July following, after a recital of the (164) terms of sale, not necessary to be set out, contains this concluding clause:
"Now if the said Schiff Bros. (the defendants, being its constituent members) will pay to H. W. Fries the interest due on the above notes on 1 January of each year, and the principal of the same at maturity, *Page 147 
the said H. W. Fries will make to the said Schiff Bros. a deed to the above described property, free of any encumbrances thereon to this date,but subject to an agreement made between H. W. Fries and J. H. McAden, inregard to the wall next McAden's lot.
In witness whereof, we have hereto put our hands and seals.
 J. SCHIFF. (Seal.) PH. SCHIFF. (Seal.) H. W. FRIES. (Seal.)
 Test: PATRICK MARTIN. W. E. SHAW."
After the destruction of the house on the defendant's lot they determined, about the middle of May, to erect a new brick building on the same site, and to excavate for a cellar or basement room underneath, and having entered into arrangements for doing so, began to dig away the earth for that purpose, and had proceeded until, from the loosening and removal of the soil from a too close proximity to the wall, it was unable to support its weight, and, giving way, the wall fell, causing the damage to the plaintiff's goods and his interest in the leased house, for which the present action is brought. Upon the five issues submitted to the jury they responded under the charge of the court, as follows:
1. Was the wall between the Schiff building and the McAden building a party wall? Answer: "Yes."
2. Did the defendants, by themselves or through their agents, (165)unlawfully dig and excavate the earth so near to the wall between the Schiff and McAden buildings that it gave way and tumbled in? Answer: "Yes."
3. Did they negligently so dig and excavate the wall that it gave way and tumbled in? Answer: "Yes."
4. Did the plaintiffs, by their want of due care, contribute to the injury? Answer: "No."
5. What damages, if any, are the plaintiffs entitled to recover? Answer: "$9,000."
The plaintiffs examined three witnesses, whose testimony we give, as far as necessary to a proper understanding of the rulings assigned as error, in the defendant's appeal.
J. H. McAden testified that, in pursuance of his contract with Fries, he excavated within five feet of the main wall, and erected a dead wall, on which the sleepers of the witness's structure rested, extending over to Fries' wall, as shown on an accompanying plat; that his building excavation extended 100 feet back, 40 feet short of his line, and when the house reached the second story, the joists were let into places opened in *Page 148 
the Fries wall; that the parapet wall on the Fries building, 9 inches high, was found to be defective, and witness took it down, and built a new one 14 inches high; that the Fries building had a rear extension beyond that of witness, in which were windows, from which the rear of witness' lot could be seen, and the wall was in common use by both proprietors; that in 1877 Philip Schiff said that some repairs were needed in the foundation, and as both were interested in it, witness ought to pay half the expense, and this witness agreed to do, and did so.
To this evidence objection was made, if offered to show an estoppel or easement, and after admitting such to be the object, it was received by the court.
The witness further testified to meeting Schiff soon after the fire in February, and the latter said he wanted witness to pay for some (166) repairs in the wall, places where windows had been filled up, the lintels being on his side, and having been burned, and witness agreed to pay one-half of the cost, but did not, in consequence of the wall falling down; that Schiff said he wanted to know, before his purchase, whether he could put an additional story on the front of his house without paying for the use of the improvement put on the wall by witness, and inquired if he could use a second story and the windows, to which he was answered that he would be entitled to use the light from the windows, and that, in order not to interfere with them, witness had stopped at 100 feet short of his line, which was 140 feet.
Similar objection was made to this testimony and overruled.
The witness testified that in May, after the fire, Schiff and witness agreed to bear, in equal parts, the expense of certain improvements in the wall, to be made by putting new bricks on his side of the wall at the price of $100.
A similar objection to this testimony was made and overruled.
The defendants, by contract with Ahrens and Phifer, the latter doing the work, were about to begin the excavation, when witness laid off a line five feet from the wall, and insisted that it should approach no nearer, and so stated to Schiff, as, if pushed further, it would endanger him; that when they crossed the line, and witness was informed of it by Phifer, he went to the place, and finding Ahrens and Asbury, the contractors for the brick work, they both expressed the opinion that they could go nearer than five feet, but not nearer than four feet, without great danger; that Schiff was sent for and came, and the matter was discussed, the ground not being clay, but of a micaceous soil, when witness pointed out the danger, and warned him against going over the four-foot line; Schiff; becoming vexed, asked Asbury, "Didn't you make estimates for excavating to the three-foot line?" and the latter (167) replied, "Yes, but how could I tell what was under the ground?" *Page 149 
And to a similar interrogatory addressed to Ahrens, the like reply was returned, Asbury adding that it would be dangerous for him to work his bricklayers nearer than the four-foot line, and he did not want to do it; that Ahrens attempted to explain, when Schiff said he had made the contract and expected it to be carried out, and left; that Phifer worked all day on the four-foot line, cutting it down to the front, and Asbury, beginning on the front, had laid a few feet on the same line, and on Wednesday morning commenced here (pointing out the place on the plat), to get it up that day; that Schiff came, and finding that the bricks were being laid on that line grew angry, and ordered the cutting to be to the three-foot line; and thereupon witness went to him and told him he was going to throw the building down, as witness feared, since he was going beyond the danger limit, and begged him to desist, instead of which "he got mad" and said "he had made a contract, and given directions to go to the three-foot line, and they would have to do it, let the consequences be what they may"; that upon witness remarking that his only remedy was by injunction, Schiff replied, "If you bother me with an injunction I'll go smack to the wall"; that returning to the building he found Ahrens marking off a line three feet from the wall and Phifer chopping, and that he did not sue out an injunction because he could not get to the judge.
To this evidence objection was made and overruled.
That the workmen went to the line so ordered, and desisted for the night; that the next morning at 9 or 9:30 the wall fell, and when witness saw the wreck that had been made — the worst, he testifies, he ever saw — the intervening wall was 2 or 2 1/2 feet deep on the ground, and the next excavation 9 or 10 feet deep; that the wall that fell out, clear from top to bottom, until it reached the point where the excavation had not extended beyond the four-foot line, but there stopped, and the brick fell over, the foundation standing where it was before. (168)
Upon cross-examination witness stated that Schiff had proposed, before commencing to dig, that it should be done in sections, the walling keeping up with the excavating, and requested witness to do the work at his own expense, or to pay half the expense of so doing, which was declined, and witness said he did not want the wall's foundations disturbed, and thus weakened.
Upon re-examination witness said that Schiff sent Ahrens to him with certain propositions, and in the conversation that ensued he said to Ahrens that the latter had advised witness to put his dead line at five feet, and ought to adopt the same rule with Schiff and make him set his dead wall at same distance, and Ahrens replied that Schiff was greedy for land, and he (Ahrens) would not let him go nearer than five feet, if *Page 150 
he could talk him out of it, and that he had told him that this would make a sufficient basement for his store.
To this conversation objection was also made and disallowed.
That Ahrens and Asbury, standing at a corner, called Schiff's attention to a seam in the earth, to which Ahrens did not wish to go, and would not unless he was forced, as the soil was exceedingly treacherous, and would not bear pressure, and an approach nearer than four feet would be attended with great danger, and both insisted upon stopping there, to which Schiff responded that he had made the contract and intended to carry it out, saying at the same time to Phifer if he would not execute the contract he would get some one who would.
Testimony, quite as strong and to the same effect, as to the persistent purpose of the acting defendant to push the excavation up to the three-foot mark, and his disregard of warnings from experienced men whom he had employed was given by Phifer, and it would be a needless (169) repetition to state it in detail.
The plaintiff Justice was examined as to the damages sustained by his firm from the falling of the wall, and he gave the estimate, about which no question of law is raised, except that the defendants deny their responsibility, if held to be responsible at all, for such loss as resulted from the water used to put out the fire, for the reason that this was a special damage not demanded in the complaint as such.
There were also exceptions to the proof of the witnesses, who were allowed to express opinions of the hazard of excavating so near the wall, being experts, which we dismiss at once with the remark that the decision of the court is upon a fact, not examinable on appeal, when there is evidence, and the correctness of their judgment has been fully vindicated by the results.
The defendants introduced no testimony, explanatory or other, and asked for these instructions:
1. If the jury believe that F. W. Ahrens was a competent and experienced builder, and the defendants, in making the excavation, acted upon his advice and assurance, but there was no danger in digging up to the three-foot line, there was no negligence, and the jury should answer the third issue "No."
2. That under the contract with Fries, McAden had no right to rest the truss and rear wall on Schiff's wall, and that he, having done so, was bound, as were the plaintiffs, to prop up their building when notified of the intention of the defendants to dig out the basement.
The instructions were declined, and instead the court charged:
You have noticed that a great part of the very able and interesting discussion of this matter has been addressed to the presiding judge and not to the jury. *Page 151 
The evidence in the case is all upon the part of the plaintiff, the defendants having offered none. Not that they have admitted all of it to be true, but they contend that upon the evidence, as you (170) may believe it, the plaintiff cannot recover.
The responsibility of declaring the law is upon the judge; it is necessary, however, that you shall decide certain issues of fact in order that the judge may be able to pronounce the judgment of the law.
And the first question is, Was the wall between the Schiff building and the McAden building a party wall — that is, a wall of right, used for the common benefit of both?
The answer to this issue depends upon the effect of certain instruments of writing and of certain facts which are undisputed; and as this effect is entirely a question of law, it devolves upon me to instruct you what the response to this issue should be upon the evidence. Without troubling you with a discussion of the law of the case, I will simply say that upon the evidence your response should be "Yes."
The second issue is, Did the defendants, by themselves or through their agents or employees, unlawfully dig and excavate the earth so near to the wall between the Schiff and McAden buildings that it gave way and tumbled in?
There is no contention on the part of the defendants that the falling of the wall was not in consequence of the digging away of earth by direction of defendants (though they say the falling might have been avoided if McAden had adopted proper measures to prevent it).
The question then is, Was it unlawfully done — that is, was it wrongfully done? For it is lawful for a man to do what he will with his own, but this is qualified by the maxim that he shall so use his own as not to injure another's. As a general principle, if one so uses his own property as to inflict unnecessary injury upon the property of another his acts are wrongful and therefore unlawful.
It follows in this case, as a consequence of the answer to the first issue, the wall being a party wall, neither party interested (171) in it had a right to do anything which would affect the wall injuriously to the other.
It is my duty to instruct you that if you believe the testimony your response to this issue should be "Yes."
The third issue presents the matter in another aspect which, in some views of the case, may be necessary to be determined by you. Did the defendants, by themselves or through their agents and employees,negligently dig and excavate the earth so near the wall between the Schiff and McAden buildings that it gave way and fell in? Did they use proper precaution and care to avoid injury to the plaintiffs? *Page 152 
The general rule on this subject of lateral support to adjacent walls, not party walls, is that one who owns land adjoining another who has a wall on or near the line may excavate upon his own land, provided he exercises proper care and skill to prevent any unnecessary injury to the adjacent landowner.
And if he had no just cause for supposing such consequence would follow and it resulted from some unforeseen cause — if he, not being skilled in such matters, employed a competent and skillful person to do the work for him, the making the excavation, and acted upon the advice and assurance of such person that there was no danger in digging up to within a certain distance of his neighbor's wall, there would not be negligence.
Trying this issue as if it were not a party wall, were the defendants negligent in their excavation? You are to consider the testimony upon this point as brought out upon the examination and cross-examination of plaintiff's witnesses.
Did defendants act upon the advice of a competent and skillful person in making the excavation, or did the person employed by defendants, or did any other competent and skillful person advise the defendants that it was not safe to excavate up to the three-foot line, and did the (172) defendants insist upon the work being done up to that line, notwithstanding such advice?
It is insisted, on the part of defendants, that the work was done under the advice of Ahrens, a competent and skillful person, according to the testimony.
On the other hand, the plaintiffs say that the testimony shows you that Ahrens advised against it, and that Asbury, another competent and skillful person, advised against it, and insisted upon putting in a wall at the four-foot line, and that Phifer protested against it, and that all the circumstances testified to show you that defendants had notice of the danger of excavating up to the three-foot line.
You must determine, upon the testimony, whether defendants exercised due care and precaution; if they did, there was no negligence; if they did not, there was negligence.
The fourth issue is, Did the plaintiffs, by their own want of due care, contribute to the injury? Did they know of the danger and do what they reasonably could to prevent the injury? Did they do what plaintiffs suggested to them was proper to be done for the protection of their property? If they did, you will respond to this issue "No."
If they knew or had reason to believe there was imminent danger of the fall of the wall, and had time to take precautions and did not do so, you will answer "Yes." *Page 153 
Now you come to consider the last issue — What damages, if any, are plaintiffs entitled to recover?
If your response to the first and second issues shall be in the affirmative, however, you may answer the third issue; and if you shall answer the fourth issue "No," you will proceed to the fifth — What damage are they entitled to recover, if any?
The measure of damages would be a fair compensation for the (173) injury received. The value of the goods in the store just before the fall of the store, from which is to be deducted the value of the goods after the accident, as impaired by the falling of the wall, the breaking, the fire and the water. This would leave the loss upon the goods. To this sum should be added the expense of taking them out of the ruins, of removing them to another place, of having them cleaned and prepared for sale, and any other actual expense incurred by the plaintiffs by reason of the injury, as by loss of time and trouble incurred; and you may give interest if you see fit. But I have not permitted evidence to go to you to prove the probable profits which plaintiffs might have made out of the sale of the goods if they had not been injured, nor injury to the credit of the plaintiffs by reason of the loss of the stock. You are to determine this issue upon reason and judgment. I am requested to instruct you, and do instruct you, that you have no right to have each juror to put down his estimate of the damages and divide the aggregate by twelve. This would not be a sensible manner of reaching your conclusion.
To the refusal to charge as requested, and to the charge as given, the defendants excepted.
The defendants further except specifically to his Honor's charge as follows:
1. That his Honor committed error in instructing the jury that upon the evidence they should answer to first issue that it was a party wall.
2. That there was error in instructing the jury that if they believe the evidence they should respond to second issue "Yes."
With this long and (174) detailed recital of what occurred at the trial, we enter upon a consideration of the exceptions taken by the defendants.
The exceptions numbered 1, 2 and 3 rest upon the same proposition — the insufficiency of the acts proved to raise an estoppel or confer any *Page 154 
right upon McAden or his lessees to the use of the wall built upon the Fries lot and at its boundary.
The objection is not so much, as we have repeatedly had occasion heretofore to remark, to the admissibility of the evidence as to its sufficiency to prove an estoppel, legal or equitable, against the defendants; in other words, to its effect.
In our opinion it was competent to show a common interest created under the contract, and recognized and acted on afterwards in the joint contributions for the maintenance and repair of the wall made by both parties.
It contains an express agreement on the part of Fries, based upon a valuable consideration, that McAden "may use the wall in such manner as may be proper and necessary to support and strengthen the building he or they (his heirs and assigns) may erect in the place of the one now on said lot," thus creating a vested interest therein.
While an easement is not transferred at law for want of a seal to the instrument necessary for that purpose, the contract, as executory, has in equity when acted on a force and efficacy little short, if any, of an easement or right of support to the wall for the security of the adjacent premises, and alike disables Fries and his successors from the arbitrary and reckless use of the adjoining earth, to the detriment of the other proprietor, without an accountability for the consequences.
Exception 4. This exception has as little support in law as the preceding. The plaintiffs are charged with a reckless inattention to their own premises, in not making provision for the strengthening of the wall to enable it to stand the effects of the removal of the earth in (175) impairing its capacity to bear the strain to which it was subject. In this connection McAden, finding his remonstrances unheeded, had threatened a resort to a judicial restraining order to arrest the work. It was met by a defiant declaration from Schiff that if "bothered" in that way "he would dig smack to the wall."
The objectionable words are but explanatory of the reason for not making application to the judge for protection against this unwarranted invasion of a right to be secure in the possession and enjoyment of his own premises, so seriously menaced. In our opinion it was competent, and, indeed, the forbearance was a strong appeal to the defendants to desist from their purpose.
Exception 5. This exception relates to a conversation between McAden and Ahrens, who came with propositions from Schiff to the former, and what passed was clearly admissible. The particular part deemed obnoxious, we suppose, from the argument, to be the remark about Schiff's greed for land. If so, the objection should have been confined to that remark, for it is an established rule that a general objection to *Page 155 
evidence, of which only a part was incompetent, will not be entertained if they are severable. Barnhardt v. Smith, 86 N.C. 473; Smiley v. Pearce,98 N.C. 185.
If, however, the obnoxious part had been specifically pointed out, it was a portion of the conversation drawn out on cross-examination and pertained to its subject-matter, Schiff's unwillingness to respect the interests and rights of an adjoining proprietor, and at most was declaratory of the principal's anxiety to have an enlarged basement upon his own premises. But in any view the exception is untenable.
Exception 6. The exception to the ruling that the witness Phifer was an expert, after a preliminary examination of his experience in digging cellars, has been already disposed of, as also the next exception, to his being allowed to say that it was dangerous to go nearer to the wall than four feet in excavating. (176)
Exception 8. This relates to the admissions of proof of the injury to the goods from water employed to extinguish the flames.
We do not understand the rule in pleading to be so stringent as to require a special averment of every immediate cause of the injury suffered, as in this case, from rust, depredations, and the like. The primary and efficient cause of all the injury, however, directly produced from fire or water, was the falling of the wall, and this brought about by undermining the earth near to it, and all the consequences resulting therefrom are within the compass of the demand for compensating damages.
Such is the ruling, even under the former strict practice in Whitehurstv. Ins. Co., 6 Jones, 352, referred to by counsel.
Exception 9. The court refused to entertain an inquiry into insurances effected on the property by the plaintiffs as foreign to the purposes of the present suit. Thus it has been held that, in an action to recover damages for an injury to the plaintiffs' ship, no reduction could be made on the ground that he had recovered from the insurers. Wood's Mayne on Dam., pp. 155-156, citing Yates v. Whyte, 4 B. N.C. 272; Bradlum v. G. W.Railway Co., L. R., 10 Ex., 1; 44 L. J., Ex. 9.
The reason given for which is that to allow such diminution would be to permit the wrongdoer to pay nothing and take all the benefit of a policy of insurance without paying the premium.
Exception 10. The court charged that upon the evidence accepted as truthful the wall was a party wall — that is, a wall of right, used for the common benefit of both parties.
That this is such clearly appears from the contract upon the faith of which it is inferable, from the terms of the instrument as well as from other facts, the injured structure was put up, as its timbers entered into and derived support from the wall. What become party walls *Page 156 
(177) and in what manner they are created are questions the learning in regard to which is so copiously set forth in Mr. Washburn's book on Easements, at the original paging 429, and following, that we deem it needless to pursue the discussion in regard to the relative rights of owners of adjacent lands or lots further than to say whether, in a technical sense, this was or was not a party wall, it had become invested with all the incidents attaching to such so far as regards the right to its use by both, and the denial of the asserted right of the owner of the soil on which it stood to remove it or endanger its stability by digging around, without reasonable precautions against doing injury to the other party interested in its remaining.
Exception 11. We cannot entertain an exception in general terms to an entire charge, and it is required to assign specific errors therein in order to the reviewal on appeal.
We shall therefore only notice the second alleged error, the first having been disposed of in the instruction, that, upon the evidence, if believed, the response to the second issue should be in the affirmative.
The evidence was so full and positive, contradicted by no one, not only of negligence, but of a reckless and persistent disregard of theadmonitions and remonstrances of his own skilled workmen, as well as of indications visible in the ground, as the work progressed towards the danger limit, as wholly to set aside the defense and render the defendant's conduct inexcusable. It may be that the danger would have been averted if the suggestions had been heeded of excavating and building the new wall in sections, so that a correspondent strengthening would have accompanied the weakening as the work progressed, and the result vindicates the wise judgment of the contractors that it would be safe to dig up to a four-foot line and dangerous to go beyond it, for the wall remained when bearing a greater pressure where the four-foot (178) space was left, and gave way where but three feet were left.
Exception 12. The last exception seeks to excuse the defendants from the consequences, in that they employed skillful workmen to do the work.
If that had furnished any defense for the reckless manner in which the work was in fact done, it disappears in the further fact that it was not left to their experience and judgment, but disregarding their skill and advice the defendants assumed full control, and ordered and directed what was done, thus themselves becoming chargeable with the consequences.
The employment of experienced and competent men only serves to extenuate and excuse when their experience and judgment become the basis of what is done. There is no complaint that what they were *Page 157 
compelled to do was not done with proper skill, but that they were forced to go too near the wall, removing too much of the supporting soil, and this was the directly ordered act of the defendants.
There is no error and the judgment must be
Affirmed.
Cited: Armfield v. Colvert, 103 N.C. 158; S. v. Wilkerson, ibid., 341;Burwell v. Sneed, 104 N.C. 122; McKinnon v. Morrison, ibid., 362; Carltonv. R. R., ibid., 369; Blue v. R. R., 117 N.C. 649; S. v. Stanton,118 N.C. 1186; Davis v. Summerfield, 131 N.C. 353; S. v. Ledford,133 N.C. 722; Cunningham v. R. R., 139 N.C. 438; Davis v. Wall,142 N.C. 451; Rollins v. Wicker, 154 N.C. 563; Phillips v. Land Co.,174 N.C. 545; Conrad v. Shuford, ibid., 721; Hunt v. Eure, 189 N.C. 488;Davis v. Robinson, ibid., 599; Michaux v. Rubber Co., 190 N.C. 619.