STATE v. JAMES M. WILKERSON.

*Objections to Evidence—False Pretence under the Statute—Caveat Emptor.*

1. When a general objection is made, either to the competency of a witness or to the reception of testimony, the party objecting may avail himself of any grounds that may exist in support of his contention, but in the case of testimony, if only part of it is incompetent, the exception will not be entertained if the evidence is severable.

2. The Court below may require the grounds of objection to testimony to be stated. If, after being required by the Court to state his objections, a party refuse so to do, his exceptions shall avail him nothing in this Court.

103—22

3. Where the examination of a witness is taken down in writing by a committing Magistrate, and afterwards read in evidence on the trial in the Superior Court, the defendant objecting, and it does not appear from the record and statement of the case on appeal whether the witness signed the examination or not, it will be presumed in this Court that the witness did sign, and that the Magistrate complied with the duties imposed upon him by the statute.

4. Where the prisoner represented that a horse he was about to sell was sound and not lame, and, upon the buyer's remarking that the horse limped, accounted for it as the result of a recent shoeing, and it was shown that the prisoner knew that the horse was diseased: *Held*, that it was proper to refuse to charge that the mere fact that the prosecutor perceived the lameness at the time of the trade entitled the prisoner to a verdict.

5. This case distinguished from *State* v. *Young*, 76 N. C., 260, and the rule as to when the doctrine of *caveat emptor* applies, in indictments for false pretense, pointed out.

This was an INDICTMENT for false pretence, tried before *Philips, J.*, and a jury, at Fall Term, 1888, of STANLY Superior Court.

The pretence charged was, "that a certain bay horse, which he, the said J. M. Wilkerson (the defendant), then and there had, was sound and not lame. Whereas, in truth and in fact, the said bay horse was not sound and was lame from a diseased shoulder." The indictment further charges, that by reason of said pretence, falsely and fraudulently made, the defendant induced the prosecutor, one W. L. Daniels, to exchange horses with him.

There was evidence on the part of the State tending to sustain the charge, and there was evidence on the part of the defendant that the prosecutor tried the horse and saw that it limped lame. There was also evidence to the effect that the prosecutor, after discovering that the horse limped, was assured by the defendant that the animal had never been lame, and that said limping was the result of having been recently shod, was temporary and not the result of.disease, and that the horse was as sound as a dollar. There

was evidence to the effect that the lameness was produced by an old disease, the signs of which were not apparent upon inspection. In the course of the trial the State introduced J. W. Bostian, a witness for the State, who testified, " that he was the Justice before whom the preliminary trial was had, and that at the trial before him, one J. P. Talbert was sworn and examined as a witness, and that his evidence was duly recorded by him and returned to the Clerk with the whole record ; that J. P. Talbert is now insane and confined in the Morganton Insane Asylum ; that the defendant was present, and with counsel, and cross-examined Talbert and the other witnesses; that the evidence so taken down by him at his trial, and returned to the Clerk, is just as it was when he returned it, and was in his handwriting." The State then offered to read to the jury the evidence of J. P. Talbert, taken down by the committing Magistrate. The Court allowed it to be read, and the ground of admission was the facts, " as testified to by J. W. Bostian, the Justice, in addition to the insanity of the witness Talbert, which was admitted." The defendant excepted.

The defendant's counsel asked for the following instructions :

" 1. If the horse was lame at the time of the trade, and the prosecuting witness could perceive the lameness, as he testified he did, then the principle of *caveat emptor* applies, and your verdict will be, not guilty." This was refused.

" 2. If the jury believe from the evidence that the horse was lame when Wilkerson traded him, and at the time of the trade he told the prosecuting witness that he took the horse at his own risk, then the principle of *caveat emptor* applies, and the jury should return a verdict of not guilty." This instruction was given.

" 3. If the jury find from the evidence that Wilkerson believed the horse to be sound and well at the time of the trade, then the jury should find the defendant not guilty." This instruction was given.

The fourth instruction was to the same effect as the above, and was given.

" 5. There is no evidence that the condition of the horse, at the time Dr. Ivey had him, was ever brought to the knowledge of Wilkerson." Refused.

" 6. There is no evidence that the condition of the horse, at the time Foreman owned him, was ever brought to the knowledge of Wilkerson." Refused.

" 7. There is no evidence that Wilkerson knew that the horse ever had a disease of the shoulder." Refused.

" 8. If Wilkerson did not know that the horse had a diseased shoulder, then the jury will return a verdict of not guilty." This instruction was given.

The Judge charged the jury that " if the defendant, at the time of the trade, represented that the horse was as sound as a dollar, and all right, that he was not lame and never had been, and that these representations were false, and the defendant knew them to be false, at the time they were made, and the prosecuting witness was thereby deceived, he would be guilty."

The defendant excepted because the Court " refused to give the instructions numbered 1, 5, 6 and 7, as asked for, and to the instructions given by the Court not included in the instructions asked for."

There was a verdict of guilty, and the defendant appealed.

*The Attorney General*, for the State.
*Mr. R. H. Battle*, for the defendant.

SHEPHERD, J. (after stating the case).   The first exception is addressed to the admission by his Honor of the written examination of Talbert, the objection being that the examination was not signed by the witness.   To this the Attorney General answers that the alleged omission should have been assigned in the Court below.   It is well settled by our author-

ities that when a general objection is made, either to the competency of a witness or to the reception of testimony, the party objecting may avail himself of any grounds that may exist in support of his contention, but in the case of testimony, " if only a part is incompetent, the exception will not be entertained if they are severable " *Hammond* v. *Schiff*, 100 N. C., 161, 175.

When the objection is made, the Court may, in all cases, require the grounds of objection to be stated, and only those stated can be made the subjects of exception and review. *State* v. *Kemp*, 87 N. C., 538 ; *State* v. *Secrest*, 80 N. C., 451.

In fairness to the Judges, and in aid of an intelligent ruling upon the questions presented, we go further, and say that if, after being required by the Court, a party refuses to state the grounds of his objections, his exception shall avail him nothing. In this case there was a general exception, but we are unable to perceive any reason why the examination should not have been admitted. The case does not purport to set out anything but a mere *extract* from the examination, and we do not feel at liberty to assume from this that the witness did not sign it. The presumption is that the Justice performed his duty. *State* v. *Parish*, Busb., 239. And his testimony and the remarks of the Judge strongly tend to show that the objection and ruling were based only upon the sufficiency of certain extrinsic facts, necessary to be shown before the examination could be read. If the witness did not sign it, the defendant should have made it so appear by having the entire examination brought up as a part of the case. This he has failed to do, and the exception must be overruled.

The fifth, sixth and seventh prayers for instruction were properly refused, as a perusal of the testimony will show that Foreman sold the horse to Ivey, and after the defendant bought him Foreman called his attention to the diseased shoulder, and that the defendant told him that he had

" gotten the shoulder all right." This disposes also of the exception to the testimony of the said Foreman and Ivey, the objection being that the defendant had no knowledge of the diseased shoulder, while they owned the animal. It was immaterial whether the defendant knew of it then or not, as it was brought to his knowledge before he traded with the prosecutor. Besides, the testimony was admissible to show that the horse was in fact diseased. The other prayers for instruction were given, except the first. This is predicated upon a fact only of the testimony of the prosecutor, and entirely ignores his statement, that when he called the defendant's attention to the " limping " of the animal the defendant assured him that it was not from any disease; had never been lame, and was as " sound as a dollar," at the same time suggesting that the " limping " was caused by the animal having been recently shod.

Mr. Wharton, in his work on Criminal Law, vol. 2, § 2128, says: " We have seen that to cheat at common law, it is essential that the fraud should be latent. It was in fact to meet this difficulty that the statute of false pretences was passed, and under this statute it has been repeatedly held that it matters not how patent the falsity of a pretence may be if it succeeds in defrauding." After speaking of some cases modifying this view, he concludes by saying: "It is submitted, however, that whether the prosecutor had the means of detection at hand, or whether the pretences were of such a character as to impose upon him, are questions of fact, to be left to the jury, as they must necessarily vary with the particular case. If fraudulent and false pretences were used and goods obtained by them, nothing but very gross carelessness will justify an acquittal. The statutes suppose defective caution, for if there were perfect caution no false pretence could take effect." We think that these principles govern this case. It is true that in *State* v. *Young*, 76 N. C., 258, the doctrine of *caveat emptor* was recog-

nized as applicable to false pretence, but, to quote the language of the Court, " the fact misrepresented was that the cotton was 'good middling,' but this was a matter of observation, and the defect was as patent to the prosecutrix as to any one else, and there the doctrine of *caveat emptor* must apply." That case was quite distinct from this. There, in the very nature of things, the prosecutrix could judge of the quality of the cotton, and nothing was said or done by the defendant to deceive or mislead her. It was, at most, a mere matter of judgment, which she, like other purchasers, was expected to exercise. In our case the pretence was that the animal was " sound, and not lame," and the evidence tended to show that the defendant knew that it had a disease of long standing called " sweeny," which was not perceptible, and that the lameness would not occur until after about three days' driving; that when the prosecutor discovered symptoms of lameness his suspicions were allayed by the assurances of the defendant, as above stated. In view of these circumstances, his Honor very properly refused to charge, that the mere fact that the prosecutor perceived the lameness at the time of the trade, entitled the defendant to a verdict of not guilty. This would be disregarding the testimony tending to the stratagem and fraud of the defendant, and putting the cause to the jury only upon the fact of the testimony which was favorable to him. No proper instruction having been refused, and there being no error in the charge, as given, we see no reason to disturb the verdict.

No error.                                 Affirmed.