## ACCEPTANCE OF AN AWARD FROM THE STATE INSURANCE FUND DOES NOT BAR AN ACTION AGAINST THE TORT FEASOR.

Superior Court of Cincinnati.

Mathilda H. Kenning, Administratrix, v. Interurban Railway & Terminal Co.

Decided, November 30, 1915.

*Funds Awarded by the Industrial Commission—In the Nature of an Occupation Tax upon Employers—Compensation under the Ohio Act and Damages under the Common Law Distinguished—Acceptance of an Award by the Industrial Commission and Recovery from the Negligent Tort-Feasor Not a Double Recovery for a Single Wrong.*

When a workman has been killed by the actionable negligence of a third person, the fact that his personal representative has already received payment from the state insurance fund under the workmen's compensation act will not prevent such representative from maintaining an action against the tort-feasor for damages for causing the death. Nor will the fact that the tort-feasor himself also contributes to the state fund affect his liability.

*Thornton R. Snyder* and *Horstman & Horstman*, for plaintiff.
*Dinsmore & Shohl*, contra.

Oppenheimer, J.

Plaintiff's intestate, an employee of the Fairmount Brewing Company, was driving one of its wagons upon a street over which defendant's cars were being operated. The wagon was struck by a car and he was killed. The petition alleges that the collision was caused solely by the negligence of defendant's servants.

The third defense of the answer, to which a demurrer has been filed, alleges that subsequent to the death of plaintiff's intestate, the widow filed an application with the industrial commission, and that an award of $3,744, together with certain sums for funeral and other expenses, was made to her for the benefit

of decedent's family. It is further alleged in the same defense that at the time of such payment defendant was also a contributor to the state insurance fund, and that it therefore had a direct pecuniary interest in the fund out of which the aforementioned sums were paid.

The several workmen's compensation acts are of very recent passage, and there has therefore been given but little opportunity for interpretation by courts of last resort. In this state a careful search has revealed but two decisions which directly involve the question now before us, and they are decisions of nisi prius courts and are unfortunately irreconcilable. But we think that the solution of the question now presented is not attended with any particular difficulty.

All so-called workmen's compensation, for which provision is made in such statutes as ours, is merely a species of social insurance. The term "compensation" is in reality a misnomer. It is not even designed to compensate the injured workman for his mental or physical suffering, for the impairment of his future earning capacity, or for many of the other things which might properly be considered by a jury in the award of compensatory damages against a tort-feasor. Indeed, the Ohio act expressly disavows any claim that the sums paid by virtue of its provisions shall be full compensation. It does not provide compensation for the first week of disability (Section 1465-78, General Code); it does not cover any medical expenses in excess of $200 (Section 1465-89); it provides payment after the first week for a limited period of time to the extent of only two-thirds of the injured workman's earning capacity (Section 1465-80). Its manifest purpose is to secure to the employee a prompt, certain and non-litigious pecuniary relief from the hardships attendant upon injury suffered in the course of his employment. The old theory of the law was that an injured employee might recover from an employer who was guilty of actual or imputed negligence, provided he himself was not negligent and had not assumed the risk of suffering such injury. The new theory of the law is that there should be at least a partial indemnity wherever the casualty is incident to the employment—unless the

casualty is the result of the wilful act of the injured employee. The old theory was a by-product of the erroneous economic assumption that the wages of the workman were measurably determined by the dangers attendant upon the employment, so that the public ultimately bore, by way of increased price of the things produced by him, the burden which primarily rested upon the employee. The new theory emanates from a more consistent economic view that it is proper for the industry itself, as a part of the cost of production, to furnish relief to the incapacitated servant and to assume the burden of all industrial casualty to its employees. Indeed, it is now generally recognized that industrial risks are necessary accompaniments and incidental expenses of all industrial enterprises.

As already indicated, the injured employee's right to such payment is not dependent upon his want of fault or upon his employer's negligence. If the injury is suffered in the course of the employment and is not wilfully self-inflicted, payment must be made. In this respect it is simply insurance paid out of the fund created in whole or in part by the employer. The first Ohio act (102 O. L., 524-533) expressly stated (Section 18) that "the State Liability Board of Awards shall establish a state *insurance fund* from premiums paid thereto * * * as herein provided." The present act (103 O. L., 95) creates an industrial commission for the purpose of administering this "insurance fund." As has been said of the English act (1897, 60 and 61 Vict., ch. 37), which is the prototype of our act, "the principle underlying the act imports into British law the novel doctrine that an employer of labor, apart from personal or constructive negligence, is a *compulsory insurer,* against accident, of the workmen employed by him." Clerk & Lindsell, Torts, 4 Ed., 98. See also Dicey, Law and Pub. Opinion in Eng., 281, 283.

We have employed the word "indemnity" as measurably definitive of the amount paid to an injured workman. Even this term is not strictly accurate, for the fact that the amount to be paid under the act is determined according to an arbitrary scale and that only partial wages are paid during incapacity, strength-

ened by the analogy to life and accident insurance, would indicate that the payment is rather in the nature of a bonus than of an indemnity. XXVII H. L. R., 307-8. Therefore no remedy by subrogation can be given, unless such remedy is expressly created by statute. *Interstate Telephone Company* v. *Public Service Electric Co.,* 90 Atl. (N. J.), 1062.

The validity of defendant's claim depends, of course, entirely upon his thesis that there can be only one recovery for the alleged tort—that when settlement has been made with one of two joint or *quasi* joint tort feasors, the other is discharged from all liability. Unfortunately for defendant's position, however, this contention begs the very question at issue. Decedent's employer and the defendant were not joint tort feasors. The law required the employer to maintain insurance for decedent's benefit. With this insurance defendant had absolutely nothing to do. It was paid to the decedent's dependents solely because he met his death in the course of the employment, which was the risk insured against. The employer was guilty of no tort, and plaintiff, to justify her claim under the compensation act, was not required to make any of the allegations which usually characterize and are essential to a claim in tort. She did not have to allege or prove negligence on the part of her decedent's employer, nor could payment be avoided by anything short of proof that the injury which caused the death was "purposely self-inflicted" (Section 1465-68). Full monetary compensation could not be recovered, nor was there any pretense that the amount actually paid covered the pecuniary loss suffered by the dependents of the decedent. The duty to make payment arose entirely outside of the law of torts. It was rather a legal obligation arising out of the contract of service (*Interstate Telephone Company* v. *Public Service Electric Company, supra*). The sum so paid bore no resemblance in any of its essential features to damages, and the right to recover can not be tested by any tort analogies.

Indeed, it has been cogently contended by many authorities that such statutes as ours are not even an exercise of the general police power, but of the taxing power; that they have nothing to

do with the enforcement of a claim arising out of an actionable wrong, but rather "are the imposition of an occupation tax upon employers   *   *   *; the sums levied constituting a fund for the relief of workmen who have been harmed in the conduct of the business." *Cunningham* v. *Northwestern, etc., Co.,* 44 Mont., 180, 209, 213; *Boyd, Workmen's Compensation,* Sections 67, 70, 75, 83, 87, 88, 91; XXVII H. L. R., 235, 245; 59 Pa. L. R., 287, 288, 291, 293-7; 10 Mich. L. R., 438-9.

It is quite apparent in any event, that such acts have departed completely from the fundamental principles of the modern law of torts. They present a "distinct revulsion from the conception that fault is essential to liability," and a "reversion to the earlier conception that he who causes harm, however innocently, is, as its author, bound to make it good." They hark back to the ancient doctrine that it was enough if defendant's act occasioned plaintiff's damages, though the act itself might have been entirely blameless. XXII H. L. R., 99; 59 Pa. L. R., 450, 451; Pollock & Maitland, Hist. Eng. Law, 2d Ed., 54.

There seems to us to be no reason for any misunderstanding concerning the purpose of the Legislature in the adoption of the Ohio law. The distinction between "compensation" under the act and damages in an action under the common law, is recognized and preserved (Sections 1465-76, 1465-92). Indeed, the latter section (Section 45 of the act of 1913) is most significant in that it states that "no provision of this act relating to the amount of compensation shall be considered by, or called to the attention of, the jury on the trial of any action to recover damages as herein provided." There could be no clearer manifestation of an intention to distinguish between compensation and damages than is found in this section. But even if the employer had been guilty of a tort, yet the payment of insurance of any kind—including state industrial insurance—would not, it seems to us, avail a third person who is guilty of negligence proximately causing a mishap (13 Cyc., 70-71; *Treefts* v. *Excise Commissioners,* 73 N. J. L., 278; *Hammond* v. *Schiff,* 100 N. C., 161). As a matter of fact, nothing whatever was received directly from decedent's employer. Payment was made out of the

state fund, with the distribution of which, as well as with the amount paid in this particular case, the employer had nothing to do. His sole duty was the payment of the assessments which were required of him by .the industrial commission, and the amount of these assessments was not dependent upon the number of claims arising out of mishaps to his own employees, but upon the number of mishaps in that particular branch of industry at large.

Defendant, however, while admitting that it could not avail itself of the insurance if it were the employee who was insured, contends that in reality it is the employer who is insured. We can not follow the defendant to this conclusion. As well might you designate as the "assured" one of a number of underwriters of a given risk, merely because the fund created by the general contributions of himself and his associates was designed to protect him from personal liability to any individual claimant. The "assured" is simply the person to whom the stipulated payments are to be made in case of the happening of the given event. In the instant case, this person is the employee and not the employer. And defendant's counsel, in their able brief, admit that if it is the employee who is the assured, a third person can not avail himself of that independent contract of insurance.

Nor can we concede that defendant itself has paid premiums into the fund out of which compensation was made to plaintiff and that it "therefore had a direct and pecuniary interest in the fund." While the state insurance fund is indeed an entirety, and while it is made up of numerous premiums paid by employers of every class, yet the rate of premium paid by each contributor depends upon the risk of injury in the class to which he belongs. The avowed purpose is to maintain a solvent fund for each class of occupation—to make each class self-supporting, as it were (Section 1465-54). Defendant quotes at length clause 4 of Section 7 of our workmen's compensation act; but we think that this section is rather corroborative of our view than of defendant's contention. It shows distinctly that an accounting is to be made by the industrial commission for the purpose of determining whether any balance remains to the credit "of *any class* of occupation or industry" after disbursements

have been made on account of injuries or death to employees *in that specific class,* and for a readjustment of rates to be paid by the employers *in that class.* Manifestly defendant had nothing to do with the rates to be charged plaintiff's employer, nor was the reverse in any sense true. However, we are of opinion that defendant's position would be untenable even if they were in the same class, for we can find in our act no evidence of an attempt in any way to abridge the remedies which an injured employee of one person may have at law against a third person for a tort which such third person commits against him. *Smale* v. *Mfg. Co.*, 160 Wis., 331.

Not only do principle and logic constrain us to sustain plaintiff's demurrer, but authority, however limited, seems likewise to favor this view. Thus in the recent case of *Jacowicz* v. *Ry. Co.*, 92 Atl. (N. J.), 946, an injured employee received compensation from a non-negligent employer, under an act similar in all its essential features to ours, and gave him a general release; yet he was permitted to recover from a third person whose negligence had directly caused his injury.

So it has been held that a release of a negligent third person who has caused an injury will not exonerate an employer from the payment of compensation provided for in the act in the absence of special statutory provisions as to subrogation. *Paving Co.* v. *Klotz,* 85 N. J. L., 432; *Perlsburg* v. *Muller,* 35 N. J. L., 299. While this is the converse of our proposition, it involves an unequivocal recognition of the basic principle thereof, viz., that compensation under the statute and damages are distinct and separate things.

The same conclusion has been reached by the industrial commission of this state in the recent case of *Ridorfo* v. *Telephone Company,* 1 Dept. Rep., Ohio, 836, and *Ferraro* v. *Iron Works,* 13 O. L. R., 439 (November 8, 1915). In the former case the commission says through its chairman:

"The necessary conclusion to be drawn from the foregoing is, it seems to us, that an employee, under the terms of the workmen's compensation act, may be injured under such circumstances as to receive compensation from his employer and at

the same time to be entitled to recover damages from some other person or corporation.''

Accordingly the commission permitted the claimant to recover from the employer, though he had already made settlement with a third person whose negligence directly caused the injury of which he complained.

The question here presented for our discussion was directly raised in the recent case of *Biddinger* v. *Steininger-Taylor Co.,* 18 N.P.(N.S.), 42. Strangely enough, the question is there raised in precisely the same manner as in the case at bar—by demurrer to a separate defense of the answer, which contained also the allegation that the defendant was a contributor to the state fund. The syllabus reads:

''An employee who has been injured or the personal representative of an employee who has been killed in the course of his employment, after having applied for and received an award under the workmen's compensation law, and after such award has been paid in full, may maintain an action against a stranger for damages for negligently causing the same personal injury.''

Interesting articles bearing upon this question, and supporting our view, may also be found in 13 O. L. R., 7 (April 5, 1915); XXVI H. L. R., 377; XXVIII H. L. R., 713.

It is interesting to observe that in some states the compensation acts themselves expressly distinguish between the employer who is required to pay the injured employee and a third person whose negligence has caused the injury, and provide that an employer who pays the compensation under the act shall have a right over against the real tort feasor, to the extent of his payment. This provision manifestly negatives any idea that they are joint tort feasors, and is found absolutely or with some qualification in the acts of California, Connecticut, Illinois, Iowa, Kansas, Nebraska, Nevada, New Jersey, Rhode Island, Wisconsin, New York, Oregon and Washington. In England this is also true (Act 60 and 61 Vict., C. 37, Section 6), but the question now presented to us can not there arise because of express provision that ''workmen  *  *  *  shall not be entitled to recover both damage and compensation.''

An opinion contrary to ours has been rendered in the recent case of *Noonan* v. *Cleveland Forge & Iron Co.*, Cuyahoga Common Pleas No. 136466 (not reported). Our only comment upon that case is that it seems to proceed entirely upon the theory that a recovery against a third person after the payment of compensation under the act would be violative of the legal principle that there can be but one recovery for a single wrong. We think that this position is entirely untenable; and though we have a high regard for the opinions of the judge who decided that case, we do not feel constrained to follow him blindly.

We are of opinion that the demurrer to the third defense of the answer should be sustained.