PAUL BARNHARDT, Ex'r v. W. A. SMITH and others.

*Fraud, evidence in—Judge's Charge—-Depositions—Executors and Administrators—Wills.*

1. Where in an action by an executor against his testator's vendee and the widow (who is also executrix and refuses to be a party plaintiff), it is alleged that there was complicity in the defendants, in the use of undue influence and fraud upon the helpless and diseased testator, to obtain a material reduction in the price of the land sold, and defendants resist recovery through the same attorney and upon the same general grounds, and such executrix has attempted to extinguish the right of action; *Held,* her declarations that she had used such influence are competent to go to the jury.

2 On cross-examination, a witness in answering a question as to such declarations gives also his own declarations, *it was held* to be too late, under a general objection to the question, to single out and assign for error such irresponsive statement.

3. Where counsel for a party is present at the taking of a deposition and examines the witness, he cannot raise an objection to the deposition at the trial.

4. And where the deposition of a resident is taken *de bene esse* and he leaves the state a few days before the sitting of the court, and is absent at the trial, such deposition may be read under the act of 1881, ch. 279—it being shown that he was out of the state and more than 75 miles from the place of trial.

5. Where it is shown or admitted that a widow obtained from her husband his personal estate and all his land, except a reversion in a part, and made common cause with another defendant whom she is charged with having assisted in using undue influence and fraud in the pur-

chase of certain land from him, her letter showing her estimate of his mental condition is competent in such action to go to the jury; especially as the letter was shown to the purchaser, who, in response to her statement therein that she would not acknowledge the deed, declared he would see that she did, and subsequently obtained her acknowledgment.

6. Where an executor attacks a contract of purchase for fraud practiced upon the testator, a judge may refuse to charge that an assignment afterwards by one defendant, who is also executrix and claims as sole legatee, made to another defendant, is a relinquishment of the action. In such case the impeaching evidence may be heard although there is no reply to such assignment set up as a defence.

7. A release by a plaintiff executor is no relinquishment of the right of action, if he is kept in ignorance of material facts—especially if such release is made from himself and wife, individually, to himself as executor and to one of the defendants as executrix.

8. Pending the question between an executor and executrix and other defendants, as to a fraud practiced upon the testator in the sale of land, it is premature to entertain the will and determine the person to whom any residue belongs.

9. Where a judge gave an instruction asked as to the disposing capacity of a testator, it was not error to add, " that the law did not require a high degree of intelligence, but in order to the validity of an act of disposition it is necessary that the testator fully understood what he was doing."

(*Carson* v. *Mills*, 69 N. C., 32 ; *Kerchner* v. *Reilly*, 72 N. C., 171 ; *Katzenstein* v. *R. R. Co*,, 78 N. C., 286 ; *Wasson* v. *Linster*, 83 N. C., 575 ; *Alexander* v. *Walker*, 13 Ired., 13 ; *Jones* v. *Cohen*, 82 N. C., 75 ; *Paine* v. *Roberts*, 82, 451, and authorities there cited, approved.)

CIVIL ACTION tried at Spring Term, 1881, of CABARRUS Superior Court, before *Eure, J.*

The defendants appealed from the judgment of the court below.

*Messrs. Fowle & Snow, Bynum & Grier, P. B. Means* and *E. G. Haywood,* for plaintiff.

*Messrs. W. J. Mongomery, C. Dowd* and *Wilson & Son,* for defendants.

SMITH, C. J. Daniel Barnhardt, stricken with paralysis and confined to his bed for three years before his death in February, 1879, on the 15th day of September, 1877, executed to the defendant, W. A. Smith, a penal bond in the sum of $8,000, with condition to be void if upon the payment of $4,000, the purchase money of the tract of land therein described, he should convey the same to the vendee according to the terms of their agreement in regard thereto. On September 16th, 1878, the said Smith assigned the title bond to his wife, the defendant, E. C. Smith, alleged to be a free-trader.

Subsequently the said W. A. Smith by false and fraudulent representations, as found by the jury, and suppressing and concealing the fact that he had entered into a contract with the defendant, J. H. Meares, for the sale of the land to him at the price of $4,100 of which $2,100 was to be paid in cash, induced the said Daniel Barnhardt to reduce the consideration to one-half the sum mentioned in the bond, and himself and wife to unite in conveying title to said Meares by their deed bearing date on December 23d, 1878, and to be delivered to him on his complying with the terms of his contract. The execution of the deed, and the acknowledgment and private examination of the wife necessary to give it legal effect, were procured by the fraudulent practices of the said W. A. Smith, with the coöperating agency of the defendant, W. M. Smith, his son, an attorney and adviser of the parties, but without any knowledge or participation therein on the part of said Meares who acted in entire good faith. The deed was accordingly delivered to Meares and he paid into the hands of said W. M. Smith the sum in money agreed upon, and at the same time executed his note, his wife uniting with him in affixing her name thereto, to the said E. C. Smith for the residue of the purchase money, due at 12 months and bearing date December 27th, 1878, and with his wife reconveyed the prem-

ises to the s id W. M. Smith in trust for the security of the deferred payment due to his mother.

This secured note was afterwards transferred to the defendant, W. W. Reed, as collateral security for a loan in money of some $300 to the said E. C. Smith.

The cash payment made by Meares to the attorney and agent, W. M. Smith, has been applied, as he states in his answer he was directed to do, to the debts of the said Daniel Barnhardt and the residue remained in his hands at the death of the latter, which occurred soon afterwards.

Daniel Barnhardt died in February, 1879, leaving a will which has been admitted to probate in the proper court, and therein appointing the plaintiff executor, and his widow, Eveline Barnhardt, executrix, both of whom accepted the trust and qualified as such. The latter refuses to join in this action and is in consequence made a defendant with the others claiming adversely to the estate, and with them resists the plaintiff's recovery.

The complaint alleges the mental incompetency of the testator to modify his previous contract of sale, or to make a valid conveyance of the land, and that he was induced so to act through the fraud and falsehood practiced, and in which the said E. C. Smith, consenting and assisting the others, participated with said W. A. Smith.

The imputations of fraud are repelled in all the answers, and it is averred that the sum of $2,000 was the fair value of the property, that the contract for reducing the price was fully understood by the testator and assented to by him, and that he possessed full legal capacity to enter into the contract and carry it into effect by his deed.

The defendants set up as an estoppel an instrument under seal executed by the plaintiff and his wife, in which they acknowledge the receipt from the said Paul Barnhardt and Eveline Barnhardt, executor and executrix of the will of the testator, by the hands of said W. M. Smith of $211.45

in full payment of all claims against said executor and executrix, except an interest in a tract of land of 77 acres wherein the latter held an estate for her life. It is therein recited to be paid out of the proceeds of sale of the land by the deceased, and the plaintiff and wife agree to make no contest about the testator's will, and release all claim to any part of his estate except an interest in the 77 acre tract before mentioned.

The suit was instituted on May 30th, 1879, and on June 12th, thereafter, as shown by the date, the said Eveline executed under seal to said E. C. Smith what is in form an assignment to her and her heirs of "all the interest that I," (using the words of the instrument) "either as executrix of my husband's will or as a legatee under said will, may have in and to the said note of $2,000, (referring to the subject of controversy) given by said Meares to said E. C. Smith, and also my interest in said tract of land." This is also relied on as a bar to the further prosecution of the action.

The substantial matters of fact in dispute evolved from the pleadings and in the form of issues submitted to the jury, were, with the responses to each, in these terms :

1. At what price did W. A. Smith contract to purchase the land from the deceased? Answer—$4,000.

2. Did W. A. Smith and W. M. Smith afterwards, by false representations and suppression of truth, induce the deceased to agree to sell or have the land for two thousand dollars? Answer—Yes.

3. At the time of the execution of the deed to Meares, was the said Daniel Barnhardt of sound mind and capable of comprehending the nature of the contract, and did he understand the said contract? Answer—No.

This summary statement will suffice to show the force and bearing of the several exceptions which the defendants' appeal from the rulings of the court during the trial, brings up for review.

1. One Petree, introduced and examined for the defend-
ants, was asked in the cross-examination by the plaintiff, if
the defendant, Eveline, did not have complete control over
her husband, and if she had not stated to the witness that
she had made the old man give her a right to the home and
the 77 acre tracts of land.   The question was objected to by
the defendants, objection overruled, and the witness allowed
to answer.   Thereupon he stated that he had a conversation
with her in June before her husband's death, in which she
said that "she had made the old man make, or had him
to make her a gift of the lands," and witness added that he
had in the lifetime of the deceased stated that his wife had
complete control over him.

The testimony sought to be elicited by the inquiry was,
the exercise of a controlling influence by the wife, as a fact,
and her own corroborating admissions.   The response is
not to the first branch of the inquiry, but is confined to
past declarations of her and himself.   The objection is to
the entire testimony asked for, (not that given in response
and as may be inferred from the statement which follows,
that she had not then herself been examined) is directed to
the reception of her declarations—she, as it is insisted in ar-
gument, being but a nominal defendant against whom no
judgment is demanded and no relief asked.   Thus consid-
ered, the exception cannot be sustained.   Not only is she
of necessity made a defendant by reason of her refusal to
join with her associate executor and trustee in asserting the
equity of the estate which they represent, but she is charged
with complicity and the exercise of undue influence over a
diseased and helpless old man, in procuring a conveyance
of the land at half its value for the benefit of the defendant
E. C. Smith—is defending the action and resisting the re-
covery with equal energy as the others, through the same
attorney and upon the same general grounds—and attempts
since the commencement of the suit, by an assignment, to

extinguish the cause of action itself. She stands therefore fully identified with her co-defendants, and her relations are equally adversary to the claim of the plaintiff. There is no reason why her declarations, as a defendant, should not be received as well as when coming from others.

The witness' own previous declarations should have been objected to, when he testified to having made them, and it is too late afterwards to complain of their admission. They were not responsive to the plaintiff's question.

Again, as a rule of practice, a party is not allowed to except generally to testimony, severable into distinct parts, some of which are competent and others not, and afterwards single out and assign as error the admission of the incompetent parts. The exception as embracing the whole testimony must be valid or it will not be sustained. It is not erroneous to refuse to rule out a volume of testimony when portions of it ought to be received; and therefore the salutary rule of practice prevails, which requires that the obnoxious evidence should be specifically pointed out and brought to the notice of the court, in order to a direct ruling on its reception. The principle is recognized where error is assigned in the charge of the court in general terms, and the charge consists of a series of propositions, some of which are correct and others bad in law. The exception will not be entertained for the reason that it does not directly point out the exceptional parts. *Insurance Co.* v. *Sea,* 21 Wall., 158.

2. The reading of the deposition of Dr. Meares, when offered in evidence on the trial, was resisted on two grounds: 1st. Because the witness had not been sworn and was not shown to be one of the excepted class to whom an affirmation is allowed in place of an oath. Bat. Rev., ch. 77, § 3. 2d. The witness is a resident of the state and his absence temporary only.

One of the defendants' counsel was present at the taking of the deposition and examined the witness without making

any objection to his giving his testimony for want of an oath or otherwise, and none was made previous to entering upon the trial. This is a clear waiver of the alleged defect or irregularity, since the objection, if made at the proper time, may have been removed or remedied, and it would be manifestly wrong to allow it to be sprung upon the plaintiff after the cause has gone to the jury. "If therefore it appears," says STRONG, J., adverting to a similar exception, "that the plaintiff. in error did waive his rights under the act of Congress—if he did practically consent that the deposition be taken and returned to the court as it was—and if by his waiver he has misled his antagonist—*if he refrained from making objections,* known to him at a time when *they might have been removed,* and until after such removal had ceased, he ought not to be permitted to raise the objection at all." *Shuttle* v. *Thompson,* 15 Wall., 151. "The general rule is," says FIELD, J., in more direct and explicit terms, "that all objections of a formal character and such as might have been obviated, if urged on the examination of the witness, must be raised at such examination or upon motion to suppress the deposition." *York Co.* v. *Railroad,* 3 Wall., 107.

The practice in this state is the same, and exceptions to the formality or regularity of taking depositions, if the party is present when they are taken, should then be made; and if not, before the issues are submitted to the jury. This was regulated by the act of March 28th, 1870, which declared that "no deposition shall be quashed or rejected on objection first made after a trial has begun because of an irregularity in taking the same." Acts 1869–'70, ch. 227, § 12—which is but a legislative recognition of "a rule of practice" already in force, as stated by the late Chief Justice in *Carson* v. *Mills,* 69 N. C., 32. See also *Kerchner* v. *Reilly,* 72 N. C., 171; *Katzenstein* v. *R. & G. R. R. Co.,* 78 N. C., 286; *Wasson* v. *Linster,* 83 N. C., 575.

The next exception to the deposition is that the witness

expects to return and his absence is not likely to be protracted beyond two terms of the court, as ruled to be necessary to its being read, in *Alexander* v. *Walker*, 13 Ired., 13.

It was in proof that the witness left a few days before the sitting of the court for the city of New York, declaring his purpose to proceed thence to California before his return, and was still away.

Whatever may be the proper interpretation of the language used in the former statute providing for the taking and using depositions, when the witness is "under the necessity of leaving the state" or "is about to leave the state," as contemplating something more than a brief absence, it is the manifest purpose of the act of 1881, ch. 279, to enlarge the operation of the law and admit evidence in this form in cases where it was not competent before. It provides in section 2 that the deposition of any witness may be taken, *de bene esse*, "when the witness lives at a greater distance, by the usual public mode of travel from the place of trial, than seventy-five miles," and "may be read in evidence in the civil action in which it is taken, and shall be as competent as if said witness was present and examined in said action ;" and in the next section, that the deposition shall not be used "unless it appears to the satisfaction of the court that the witness is then dead or *gone out of the state*, or to a greater distance than seventy-five miles from the place where the court is sitting, or that by reason of age," &c.

The deposition meets two of those conditions, in the proof that he was "gone out of the state" and was then at a "greater distance than seventy-five miles from the place where the court was sitting."

3. The third exception is to the admission of the letter of the defendant Eveline, as substantive, instead of impeaching evidence.

It was received however to show her estimate of the mental condition of her husband, the weight of which the

jury were to determine. It had been shown or admitted that the deceased by deed or in his will had given her his personal property and all his land, except a remainder or reversion in the 77 acre tract, thus disclosing the influence which she had acquired and exercised over him. What we have already said about her voluntary assumption of hostile relations towards the claim asserted by the plaintiff on behalf of the estate, and making common cause with the other defendants in resisting it, renders further discussion of the point as to the competency of her declarations needless. But if it were otherwise, the letter was exhibited to the defendant, W. A. Smith, and at his suggestion, to the other defendant, W. M. Smith, who on reading it remarked—"This is Capt. Orchard's work, I see his finger in it," adding "that Mrs. Barnhardt could not write, and that he would attend to her, and see that she did acknowledge the deed," responding to an expression in the letter in which she says, "I have not acknowledged it yet, nor ever expect to." This would render the evidence competent if it were not so before, especially in connection with the fact that he did soon after procure her acknowledgment and private examination to complete the deed.

4. The defendants requested an instruction that the assignment by said Eveline was in law an extinguishment of the cause of action, and as there were no outstanding debts against the testator, and she as sole legatee was entitled to the fund, the right thereto vested in the defendant, E. C. Smith, and there could be no recovery in the suit. The instruction was refused, for the reason that the transaction was assailed for fraud concerted between the parties to it, and if successfully assailed the instrument would be inoperative and void. Nor, as His Honor held, and in our opinion correctly held, was it necessary to let in this impeaching proof that the invalidity for this cause should be alleged in a formal replication. The legal sufficiency of an instru-

ment is involved in setting it up as a defence, and this is an issue to be determined on the trial, at least under our present system. It is only when a counter-claim is relied on that the plaintiff's failure to reply may afford ground for a judgment for want of a replication, but not when the matter constitutes a defence to the action merely. C. C. P., §§ 105, 106.

5. In the same manner must be disposed of the alleged release of the plaintiff. It is admitted by the attorney who paid him the money and exacted the instrument, that the plaintiff was not advised of the facts of the case, and did not know of the excess of the price represented in the note of Meares.

It may be further remarked that the release itself is *from the plaintiff* and wife individually, to the plaintiff and the said Eveline, as representatives of the testator, and in their several fiduciary capacities, and for this reason it has no efficacy at law. The point is covered in both the last two exceptions by the ruling in *Jones* v. *Cohen*, 82 N. C., 75.

It is unnecessary to inquire into the provisions of the will, since its proper construction and the person to whom any residue found in the hands of the executor or executrix upon settlement of the administration account is due, will then come up for determination, but they are prematurely brought forward now.

6. The court was asked to direct the jury that, " the law does not require that persons should be able to make a disposition of their property with judgment and discretion in order to the validity of their act, and it is sufficient if the deceased understood what he was about." The instruction was given and it was added, " the law did not require a high degree of intelligence, but in order to the validity of an act of disposition, it was necessary that the deceased should have fully understood what he was doing." The exception was to the concluding words.

We think there is no error, and that the language used, "fully understood," means only that the deceased did *understand* what he was engaged in doing, and is in antagonism to a partial or imperfect apprehension of it. The rule laid down by LORD COKE "that the person must be able to understand what he is about" approved in *Moffitt* v. *Witherspoon*, 10 Ired., 185, *Horne* v. *Horne*, 9 Ired., 99, and more recently in *Paine* v. *Roberts*, 82 N. C.. 451, as a general and practical rule for the guidance of juries, approximates an accurate statement of the law as to the degree of mental capacity required to make a valid disposition of property, as the subject will admit. In *Cornelius* v. *Cornelius*, 7 Jones, 583, a charge was upheld against the caveators in these words: "If the deceased understood the nature of the act in which he was engaged in its full extent and effect" the testator possessed testamentary capacity. See O'Hara Wills, 14. Without multiplying references to the fruitless efforts of courts to give a more exact definition of legal ability to do a binding act, we prefer to adopt and adhere to the plain rule laid down in the earliest authorities, and pursued consistently in the past adjudications of this court. Taking the entire charge we think the law was correctly expounded.

Upon a full review we discover no error and the judgment must be affirmed.

No error.    Affirmed.