STATE v. JAMES STANTON and ROD SHELTON.

*Indictment for Murder—Homicide—Murder in Second Degree—Trial-Jury—Challenge to Array—Evidence—Appeal—Harmless Error.*

1. In the absence of any allegation that the sheriff acted corruptly or with partiality, in summoning the *venire*, or that anything had been done affecting " the integrity and fairness of the entire panel," it is not a ground of challenge to the array that the sheriff failed to summon several of the special *venire* drawn from the jury box or that the jury box was not revised by the county commissioners.

2. When a special *venire* is exhausted without completing the jury, the court may (under Section 1739 of *The Code*) order a further *venire* to be summoned at once from the by-standers.

3. An objection to evidence must specifically point out the portions claimed to be obnoxious, especially when it is made to a large volume of testimony.

4. On the trial of J. and R. for murder, a witness for the State testified as to a conspiracy between defendants; that R. and witness were in jail together, and R. told witness that they had been his ruin; that he said he met three persons named, and had started home, and they begged him to come back with them to hunt certain boys, to get into an affray with them; that he had then turned, and went back with them, and that was his ruin. Defendant J. was not present during such conversation; *Held*, that it was error to admit such testimony as against J.

STATE *v.* STANTON.

5. In such case the admission of such evidence was harmless error, inasmuch as the jury convicted defendants of murder in the second degree only, thereby declaring that the conspiracy had not been proved.

INDICTMENT FOR MURDER, tried before *Ewart, J.,* at ----------- Term of the Criminal Court, Western Circuit, for MADISON county. The defendants were convicted of murder in the second degree and appealed.

*The Attorney General* and *J. M. Gudger, Jr.,* for the State.

*Mr. J. M. Moody,* for defendants (appellants).

MONTGOMERY, J.: The indictment is for murder. A special *venire* was ordered and return thereof made. The defendants challenged the array on the grounds, first, That the sheriff had failed to summon several of the special *venire* drawn from the jury box; second, That the jury boxes had not been revised by the county commissioners. The court properly declined to hear either one of the grounds of objection. There was no allegation that the sheriff acted corruptly, or with partiality, in summoning the *venire,* or that anything had been done affecting the " integrity and fairness of the entire panel." In *State* v. *Whitt,* 113 N. C., 716, a challenge was made to the array, one of the grounds being " because one of those named in the *venire* was not summoned." The objection was overruled, and this Court affirmed the ruling of the court below. The same point had been decided in *State* v. *Hensley,* 94 N. C., 1021. In the last-named case it was decided that while the county commissioners, who had failed to revise the jury list according to law, were guilty of neglect (" highly culpable,") and the clerk and sheriff were equally negligent in the performance of their respective duties, as

to the locking, custody and safe-keeping of the box, yet the regulations concerning these matters were directory and not mandatory, and that the " only essential was to obtain a fair and impartial jury composed of eligible men." It was not suggested even in the defendant's objection that any names in the jury box were improperly there, or that any had been put there fraudulently, or that any had been taken out. There was not even a suspicion hinted at that the defendants might be prejudiced in the trial by reason of the matters stated in the opinion, and it does not appear anywhere that they were prejudiced. There was no error in the ruling of His Honor.

The first special *venire* having been exhausted before the jury had been completed, the court made an order that another special *venire* of 30, returnable at once, should be summoned. Upon the return of this *venire*, the defendants objected on the ground that, " as the first *venire*, had been drawn from the jury box, the court did not have the power to order a second *venire* to be summoned by the sheriff from the by-standers." The objection was overruled, and his Honor was right in so doing. The statute (Section 1739 of *The Code*) provides that the judge in his discretion has the power, the first *venire* proving insufficient, to order a further *venire* to be drawn from the box or summoned by the sheriff. *State v. Brogden*, 111 N. C., 656, construes the power of the judge under that statute.

Exceptions were made by the defendants to the ruling of his Honor admitting the testimony of Jamison Chandley, George Franklin, Hattie Franklin and Baxter Shelton, witnesses for the State. Chandley had testified at considerable length when the defendant's counsel objected, without specifying what part of the evidence he objected to. He was informed by the solicitor that the object of the testimony was to show a conspiracy between the

defendants to assault and beat deceased, or to kill him. The witness then continued his testimony at great length, when objection was again made " because there was no conspiracy charged in the indictment, and the conspiracy ought to be shown first before any circumstances were admissible, and the defendants objected to this whole evidence on that line as given so far." The witness still proceeded at length, when " defendants objected to all this testimony if made to show a conspiracy." The witness in the beginning of his testimony, leading up to the meeting of the parties an hour or so before the homicide occurred, stated some immaterial things, of no harm to the defendants, without objection. As he proceeded, he narrated facts and circumstances strongly going to show a conspiracy between the defendants to assault and beat the deceased. The witness was also an eye-witness to the killing, and gave the details with clearness and in an intelligent manner. We have read his testimony, and we fail to see that it was objectionable. If, however, it had contained objectionable matter, the defendants ought to have pointed out, from the general mass of the whole evidence, the parts that were alleged to be obnoxious. In *Barnhardt* v. *Smith*, 86 N. C., 473, the then Chief Justice SMITH said for the Court : " As a rule of practice a party is not allowed to except generally to testimony, severable into distinct parts, some of which are competent and others not, and afterwards single out and assign as error the admission of the incompetent parts. The exception, as embracing the whole testimony, must be valid or it will not be sustained. It is not erroneous to refuse to rule out a volume of testimony when portions of it ought to be received ; and therefore the salutary rule of practice prevails which requires that the obnoxious evidence should be specifically pointed out and brought to the

118—75

notice of the court in order to a direct ruling on its reception." This ruling was affirmed in *Smiley* v. *Pearce*, 98 N. C., 185, and in *Hammond* v. *Schiff*, 100 N. C., 161. The objections to the testimony of the other State witnesses named above were made in the same manner as were those made to Chandley's evidence—generally—without specifying the parts alleged to be objectionable, and for the reasons given for overruling the exceptions to Chandley's evidence the objections to the testimony of the other witnesses were properly overruled. We have examined the whole of it, however, and we are of opinion that it was competent, and almost all of it relevant.

Of course in a large volmue of testimony like that which was brought out in this case, there must creep in some tautology and prolixity about immaterial and irrelevant matters.

The State also introduced one Blankenship as a witness for the purpose of proving the conspiracy between the defendants, who testified as follows: "He (that is Rod Shelton, the defendant) did not tell what he did. Rod and I were in jail together and Rod told me that they had been his destruction and ruin forever._____He said that he met Bev. Stanton, Jim Stanton and Boss Stanton in the road, somewhere near the church, and he had been up the creek and had started home, and they begged him to come back up the creek and go with them to hunt these boys, Baxter and Everett Shelton, to get into an affray with them, and he said that he turned and went back with them, and that was his destruction and ruin." James Stanton the other defendant was not present when this conversation took place. His Honor received this testimony as against both defendants, and against their objection. Of course, the testimony was competent against the

STATE v. STANTON.

defendant Shelton for all purposes. It was not compe tent against Stanton, the other defendant, it being a decla ration made after the homicide and if the jury had con victed him of murder in the first degree he would be entit led to a new trial. The testimony was harmless however, because they were convicted of murder in the second degree, and by this verdict the jury declared that the conspiracy had not been proved, and there was not more than a scintilla of evidence in favor of Stanton going to show excusable homicide, Stanton himself in his testimony making statements which alone would have justiffed the jury in convicting him of murder in the second degree, and no witness who saw the killing had a favorable word for him.

Six special instructions were prayed by the defendant. There appear in the case no exceptions to the charge of the judge, nor does it appear that ruling was made on the request for special instructions. The fourth prayer, requesting the court to withdraw the testimony of Blakenship from the jury, was not granted, as we notice it in the recapitulation of the evidence by his Honor to the jury; but, as we have before remarked, the error in admitting that testimony was harmless. On all the other questions involved in the prayer for instructions, his Honor's charge was full and in accordance with the law. He submitted the question of excusable homicide to the jury, which we doubt if the prisoner Stanton was entitled to. There is no error and the judgment is affirmed.

Affirmed.