STATE v. LEDFORD.

(Filed December 8, 1903.)

1. INDICTMENT—*Return into Court—Grand Jury.*

   The facts in this case show that the bill of indictment was returned in open court.

2. INDICTMENT—*Return into Court—Quashal—Arrest of Judgment— Waiver.*

   A defendant waives his right to object that an indictment was not returned in open court when he pleads and moves for a severance before having moved to quash the bill.

3. VENUE—*Abatement—Arrest of Judgment—Removal of Causes—Exceptions and Objections.*

   An objection to the venue in that a case had been improperly removed from one county to another must be taken by a plea in abatement, not by a motion in arrest of judgment.

4. REMOVAL OF CAUSES—*Venue.*

   The facts as stated in this case do not amount to the removal of a certain criminal case from the county in which the indictment was found.

5. EXCEPTIONS AND OBJECTIONS—*Evidence.*

   A general objection to evidence will not be entertained if such evidence consists of several distinct parts, some of which are competent and some not competent.

6. EVIDENCE—*Arson.*

   On a prosecution for arson a witness testified that the evening before the night of the burning the children of defendant came to her house and borrowed matches, and that the morning after the fire she stated to defendant that she thought she furnished the matches which burned the barn, whereupon he said that if she thought so not to say anything about it; that witness and the owner of the barn were not friendly; and that about a week before the burning defendant came to witness' house to

get some tobacco, and witness said she had none, and he asked her why she did not get some from the owner of the barn and never pay for it, and stated that the owner was getting rich too fast, and that he had a fine barn, but that it would not stand two years, such evidence was competent.

INDICTMENT against C. R. Ledford, heard by Judge *W. A. Hoke* and a jury, at Fall Term, 1902, of the Superior Court of YANCEY County. From a verdict of guilty and judgment thereon the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*J. S. Adams* and *E. J. Justice,* for the defendant.

WALKER, J. The defendant and others were indicted at August Term, 1900, of the Criminal Court of Yancey County for setting fire to and burning a barn, the property of one B. L. Hensley, and on motion of defendant there was a severance as to him. He was tried and convicted at Fall Term, 1902, of the Superior Court of said county (the Criminal Court having in the meantime been abolished), and from the judgment entered upon the verdict he appealed. The defendant assigns three errors which will be considered in the order in which they are presented in the record.

The first error assigned is that it does not appear in the record that the bill of indictment was returned by the grand jury in open Court. It is without doubt necessary that the indictment should be presented in open Court, and the return of the grand jury is made, or is presumed to be made, in Court while it is actually in session, and at no other time. *State v. Collins,* 14 N. C., 121. It appears from the transcript in this case that the Criminal Court of Yancey County opened and organized on the 6th day of August, 1900, the time appointed by law, and that on the minutes is this entry: "The Court having thus organized the following proceedings

were had and done." Then follows the indictment with the endorsement, showing the examination of witnesses under oath before the grand jury and the finding that it was a true bill, which is signed by the foreman. It is then stated that the defendant moved for a severance, and it was ordered by the Court that he be allowed to plead and to be tried separately from his co-defendants. The case was continued and the defendant gave bond for his appearance at the next term. All this appears to have been done without any interruption in the proceedings of the Court from the time of its organization. The case cannot well be distinguished from *State v. Lee,* 80 N. C., 483, in which *Dillard, J.,* at page 485, says: "There can be no doubt that it is necessary that a bill of indictment should be returned by the grand jury into open Court; and we think according to the proper construction and import of the transcript from Bladen Superior Court, the bill against the prisoner was returned as required by law. The transcript, after stating the Court as opened and held on the 8th Monday after the 2d Monday in August, 1878, for the county of Bladen, a *venire facias* returned by the sheriff, a list of persons summoned as jurors, and the drawing and organization of a grand jury therefrom, uses the language: "It is presented in the manner and form following"; and then comes the bill of indictment under which the prisoner was tried. The jury are required to come into Court and make their return, and on coming in for this purpose, they pronounce their return, or are presumed to do so, and the Court records their return, and the record of the return thus pronounced is made by the use of the words: "It is presented in manner and form following." In legal import, the record having stated the Court as open and the grand jury sworn and charged, it is to be taken when the record recites "it is presented," etc., that the Court is sitting, and therefore that the return is made in open Court."

Even if, under the facts and circumstances of this case, the defendant can avail himself of this alleged defect in the record by a motion in arrest of judgment, he having asked to be allowed to plead and for a severance, without moving to quash or making any other preliminary motion, we do not think there is any merit in the exception, and it is disallowed. *State v. McBroom*, 127 N. C., 528.

The defendant next excepted because, as he alleges, the Superior Court of Yancey County had no jurisdiction of the case, the same having been removed for trial by order of the Court to the county of Mitchell and having never been properly remanded to Yancey County, so as to reinvest that Court with jurisdiction. The facts relating to this exception are as follows: It appears from the record that the defendants C. R. Ledford, Will Ledford and Neil Ledford were jointly indicted and that at Spring Term, 1901, upon motion of Will Ledford, the case as to him was removed for trial to Mitchell County. The order of removal was improperly and ambiguously worded, and it did not appear clearly therefrom whether it was made as to Will Ledford alone or as to both Will and C. R. Ledford, and for that reason the Superior Court of Mitchell County, at September Term, 1901, after finding and stating in its order the fact that the case was not removed as to C. R. Ledford but only as to Will Ledford, and that there had been a severance of the trial before the removal, ordered that the "case of C. R. Ledford should remain" in the Superior Court of Yancey County, and should be stated on the docket of that Court by the Clerk and stand for trial at the next term, and the Court then required C. R. Ledford, who was at the bar of the Court, to give surety for his appearance at the next term of Yancey Superior Court, granting him some indulgence so that he could find bail. The Court further required its Clerk to transmit a copy of that order to the Clerk of the Superior Court of

Yancey County with directions to restore the case of *State v. C. R. Ledford* to the docket of the latter Court in accordance with the tenor of the order made in Mitchell Superior Court. It further appears that at Fall Term, 1901, of the Superior Court of Yancey County, in the case of *State v. C. R. Ledford,* the following entry was made on the minutes: "The State suggests the insufficiency of the Mitchell County record removing cause to Yancey. It is ordered that the cause be sent back to Mitchell County for a full and perfect record." The defendant's counsel contended that this order removed the case back to Yancey County. The language of this minute is untechnical, but we take it to mean that the Court, by this order in the nature of a *certiorari,* directed a more perfect transcript of the proceedings in Mitchell County to be certified by the Clerk of that Court to the Superior Court of Yancey County. In the view we take of the case, this order was unnecessary, and even if it was a proper one it could not change our decision. The Superior Court of Yancey County had possession of the original record in the case and could proceed regularly upon it without any more perfect transcript from the Superior Court of Mitchell County.

At April Term, 1902, of the Superior Court of Yancey County, the defendant C. R. Ledford submitted a motion to remove his case for trial to some adjacent county. This motion was denied in the following order of the Court: "This cause coming on to be heard upon the motion of C. R. Ledford to remove this cause to some adjacent county for trial, now, after considering the affidavits filed, the motion to remove is denied. It is ordered that this cause be continued; and it is further ordered that the Clerk of Mitchell County certify a copy of the transcript received by him, together with a transcript of the proceedings had and done in his Court in the case of C. R. Ledford and William Ledford, and produce the same on or before the next term of this Court.

It is the further order of this Court that the Clerk of this Court transmit a copy of this order duly certified under his seal of office to the Clerk of the Superior Court of Mitchell County within the first fifteen days after the adjournment of this Court." The last order explains the one made at Fall Term, 1901, and shows, as we have already construed it, that the latter order merely required to be certified a copy of the proceedings of the Superior Court of Mitchell County, in which Court the record had been corrected so that it would speak the truth and show that the cause had not been removed to that county as to C. R. Ledford.

We have set forth fully the material parts of the record which are necessary to be considered in connection with this exception, and it appears therefrom that as a fact the case of the defendant C. R. Ledford was never removed from Yancey County, and the confusion and uncertainty in the transcript which was sent to the Superior Court of Mitchell County were caused merely by a misprision of the Clerk or some misapprehension on his part as to what had actually been done. This being so, the defendant's objection to the jurisdiction is groundless.

But if the case had been properly removed we do not think the defendant would have had any legal cause to complain. By its order at September Term, 1901, the Superior Court of Mitchell County directed that the case of *State v. C. R. Ledford* be returned to the Superior Court of Yancey County, and that the Clerk of the latter Court reinstate the case on the docket so that it should stand for trial at the next term. The defendant does not object to the order upon the ground that he was thereby given a too speedy trial in the county of Yancey, and if he had made any such objection, it does not appear that he did not have sufficient opportunity to prepare and present his defense, or that he was otherwise prejudiced by the order of the Court, which was manifestly

intended to speed the cause and accelerate the administration of justice. It is recited in that order that the fact of the mistake appearing, and after an intimation of the Court, "counsel for the defendant (C. R. Ledford) stated that they would neither consent nor object to an order returning the case to Yancey County for trial." The defendant was arraigned in the Superior Court of the latter county at Fall Term, 1902, and entered a plea of "not guilty." He then submitted a motion for a removal, which was overruled, and then a motion for continuance, which was denied. He was thereupon tried and convicted. It further appears from the above recital of facts, as taken from the record, that the defendant never objected to the jurisdiction of the Court until after verdict, when he moved in arrest of judgment.

If the case had been regularly removed to the county of Mitchell for trial, we think that Court would have committed an error in making the order that the case be returned to the Superior Court of Yancey County, unless the order had been made by consent of the State and the defendant, or was based upon affidavits and a proper finding of facts by the Court. When a case is removed from one county to another under the statute so as to be regularly constituted in the Superior Court of the latter county, it cannot be remanded by the Court of its own motion to the county from which it was removed (*State v. Swepson*, 80 N. C., 571), but if it is thus irregularly remanded the latter Court may try it if the defendant fails to object in apt time and in the proper way to the Court further proceeding in the cause. It is not a question of jurisdiction upon such a state of facts, but only one of venue. The Superior Court of Yancey County had a general jurisdiction of all offenses within the limits fixed by law, and having this jurisdiction it could proceed in any cause pending in it, as in this case, where the indictment was found in that Court, notwithstanding any irregularity in removing the

case, unless its right to hear and determine the case is in some way challenged by the defendant before verdict. It has been ruled that this must be done by a plea in abatement. *State v. Woodard,* 123 N. C., 710. A defendant cannot, of course, be tried in the Court of a county where no indictment has been found by a grand jury, unless the case has been regularly removed from the Court of another county where such an indictment has been returned; but ours is not that sort of a case, for this prosecution originated in the Superior Court of Yancey County. It is unnecessary to pursue the subject further, as we consider it perfectly clear from our reading of the record that the case was not in fact removed. The exception of the defendant based upon the objection to the jurisdiction cannot, therefore, be sustained. The motion in arrest of judgment was properly overruled.

The State introduced Julia Lewis, who lived near the defendant Ledford, and proposed to prove by her "that the evening before the night that the barn was burned the children of the defendant came to her house and borrowed matches." The defendant objected to this evidence, the objection was sustained and the evidence was excluded. The witness then testified that "The defendant came to her house on the morning after the fire and told her that Back Hensley's (meaning B. S. Hensley's) barn was burned the night before, and that he had seen it burn; that he and his wife and son were coming from their upper place about ten o'clock at night, and as they passed Back Hensley's they saw the barn burning. To this the witness said she replied: 'I think I furnished the matches that burned it.' The defendant said: "Julia, you don't think that?" The witness said she knew it. The defendant then said: 'If you think that don't say anything about it.' This speech about matches referred to some matches which I had given the defendant's children the evening before." The defendant objected to the above evi-

dence; the objection was overruled, and the defendant excepted.

The witness further testified that "She and B. S. Hensley were relatives, but were not friendly; that about a week before the barn was burned the defendant and his wife came to her house, and the defendant said he had 'come by to get some sweet tobacco.' The witness said she had none. The defendant replied: 'Why don't you go down to Back Hensley's and get some? Why don't you get $5 worth and never pay for it? Back Hensley is getting rich too fast, anyhow. He is getting rich faster than anybody on the creek. He has a fine barn, but that will not stand two years.' " The defendant objected to the above evidence; the objection was overruled, and the defendant excepted.

The objections are general, and the rule is well settled that such objections will not be entertained if the evidence consists of several distinct parts, some of which are competent and others not. In such a case the objector must specify the ground of the objection, and it must be confined to the incompetent evidence. Unless this is done he cannot afterwards single out and assign as error the admission of that part of the testimony which was incompetent. *Barnhardt v. Smith,* 86 N. C., 473; *Smiley v. Pearce,* 98 N. C., 365; *Hammond v. Schiff,* 100 N. C., 161; *State v. Stanton,* 118 N. C., 1182; *McRae v. Malloy,* 93 N. C., 164. The same rule applies to an objection to the Judge's charge, when it consists of several propositions. *Bost v. Bost,* 87 N. C., 477; *Insurance Co. v. Sea,* 21 Wall., 158. Some of the evidence objected to by the defendant was clearly admissible. But waving this rule of practice for the purpose of the argument, we do not see that any of the testimony was incompetent. The defendant's counsel in his argument specially pointed out as incompetent the following statement of the witness: "This speech about matches referred to some matches which I had given the de-

fendant's children the evening before." We do not understand why it was not competent for the witness to state as a fact that she had given matches to the defendant's children, when this evidence is considered, as it should be, in connection with the conversation that took place between the witness and the defendant, and to which the statement of the witness expressly referred. The defendant went to the witness' house the morning of the day after the fire and stated that Back Hensley's barn was burned the night before, and that he had seen it burn. To this the witness replied: "I think I furnished the matches that burned it," whereupon the defendant said to the witness: "Julia, you don't think that." The witness said: "I know it," and the defendant replied: "If you think that don't say anything about it." Can it be doubted that the jury might have inferred from this colloquy between the witness and the defendant that the latter had knowledge of the fact that the witness had given matches to his children the previous night? Indeed, the evidence was sufficient for them to draw the conclusion therefrom that he had received the matches from his children, and they also might have inferred that he sent his children for them. This interpretation of the evidence is greatly strengthened and the view taken by us made still more apparent as the correct one by the subsequent part of the evidence, in which it appears that about a week before the fire occurred the defendant asked the witnesss why she did not go down to Back Hensley's and get some of his sweet tobacco, as much as $5 worth and never pay for it, and that the defendant said at that time that Hensley was getting rich faster than anybody on the creek, and that "he has a fine barn, but it will not stand two years." This might be regarded as an indirect threat that defendant would burn the barn, and when taken in connection with the former part of the testimony fully

warranted the jury in finding that he procured matches through his children for that purpose, and that he intended by his language to the witness to induce her to suppress her knowledge of the matter. The defendant's counsel insisted that it was not competent for the witness to testify that when, in her conversation with the defendant, it was stated by her that she thought she had furnished the matches that burned the barn she referred to the matches given by her to the defendant's children. Without this expression of the witness the very language of the conversation clearly and conclusively shows that she did refer to those matches, because it does not appear that she furnished any other matches. The matches given to the children were the only ones that could have been referred to by the witness. It will not do to separate one part of a witness' testimony from the other parts, and then object to the part thus separated as incompetent. This is not the proper way of testing the admissibility of testimony. The part so objected to must be considered with what precedes and follows it, in order that it may be seen and passed upon in its relation to the whole of the testimony. If detached and considered in its isolated position, without reference to the other testimony, it may appear to be incompetent, whereas when read with reference to the context it is readily seen to be not only competent in form and substance, but very material and relevant to the controversy. This objection is not well taken and must be overruled.

We have considered the case somewhat more at length than we would otherwise have done, not only because of its importance and the serious consequence to the defendant it involves, but because the exceptions were earnestly and ably discussed before us by the defendant's counsel and the correctness of his position zealously advocated and insisted upon.

After a most careful examination of the facts and authorities, we have been able to discover nothing in the exceptions

or the record on which the judgment ought to be reversed. It must be so certified, to the end that further proceedings may be had according to law.

No error.