MAGGIE ROLLINS v. J. A. WICKER.

(Filed 5 April, 1911.)

1. **Lands—Title—Plaintiff's Legitimacy—Defendant's Title.**

In an action for possession of lands, wherein the plaintiff's title depended solely upon the question of her legitimacy, a finding by the jury as to defendant's title is not material, as plaintiff must depend upon the strength of her own title.

2. **Lands—Title—Legitimacy—Declarations—Court Records—Secondary Evidence.**

   The plaintiff sued for possession of lands, and her title thereto depended solely upon her legitimacy. It was proper to exclude the evidence of a witness, who was a juror in a former action wherein the defendant was not a party, which was offered for the purpose of showing that therein the jury found the question of legitimacy in plaintiff's favor, there being no evidence, among other reasons, that the court record had been lost or destroyed.

3. **Same.**

   Only duly exemplified and authenticated copies of the records in judicial proceedings are competent to prove their contents, and parol evidence of their contents is secondary and inadmissible evidence unless the original record is lost or destroyed or cannot be produced.

4. **Evidence—Declarations—Legitimacy—Ante Litem Motam.**

   Declarations of deceased persons as to the legitimacy of the plaintiff, offered in an action involving that question, are incompetent if not made *ante litem motam.*

5. **Same—Time.**

   For declarations of deceased persons to be competent with respect to their having been made *ante litem motam,* they must be free from suspicion of bias and must have been made before the beginning of the controversy, which is not necessarily the commencement of the action; and testimony of such persons given at a former trial involving the same questions as in the present one is incompetent.

6. **Evidence—Objections and Exceptions.**

   A general objection to evidence which is partly competent cannot be sustained; the objection should specify the grounds thereof and be confined to the incompetent evidence.

7. **Evidence—Legitimacy—Declarations—Ante Litem Motam—Pedigree—Independent Recollection.**

   In an action for possession of land, wherein plaintiff's title depended solely upon her legitimacy, objection was made by her to the testimony of defendant's witness, who stated that he remembered the time of the marriage; that plaintiff's mother (now deceased) came through his yard "that morning and said she had been married that day," and that plaintiff was then 2 or 3 years old. The evidence held competent, as a declaration relating to pedigree, it having been made by the mother *ante litem motam,* and being her spontaneous exclamation as to an event then uppermost in her mind, was free from any suspicion

of error; besides, the mother's declaration was a circumstance which tended to fix in the witness's mind the fact that, at that time, he had knowledge of the marriage and of plaintiff's age.

APPEAL by plaintiff from *W. R. Allen, J.,* at November Term, 1910, of LEE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*Q. K. Nimocks for plaintiff.*
*A. A. F. Seawell and D. E. McIver for defendant.*

WALKER, J. This is an action for the recovery of land. Plaintiff claimed that she inherited the land from her father, Thomas Rollins, and the sole question in the case is as to her legitimacy. Her father and mother were married at the time of his death. The evidence as to the time of the plaintiff's birth was conflicting. The jury found that Thomas Rollins owned the land at the time of his death; that plaintiff is not his heir at law, and, therefore, is not the owner of the land. There was a finding as to defendant's title, but that is not material, as plaintiff must recover upon the strength of her own title, and cannot rely on the weakness of defendant's.

In order to show that plaintiff was the legitimate child of Thomas and Rachel Rollins, the plaintiff proposed to prove by a witness named Kelly that he was a juror in the trial of a case formerly pending in Moore County, wherein the plaintiff in this case, but not the defendant, was a party, and which involved the legitimacy of the plaintiff, and that the jury found as a fact that the plaintiff was the legitimate child of Thomas and Rachel Rollins. An objection to this evidence was sustained, and the plaintiff excepted. The ruling was correct. That was not the way to prove the fact, even if the evidence was otherwise competent. The record itself is the primary and only competent proof of its contents, unless it has been lost or destroyed, and there was no suggestion that it had been. Secondary evidence is admissible when the original cannot be produced. *Varner v. Johnston,* 112 N. C., 570; *In re Thorp,* 150 N. C., 487. "It may be stated generally that

the record, or, in proper cases, certified or duly exemplified *and* authenticated copies thereof, should be produced to show transactions in judicial proceedings, and, when a matter is of record, parol evidence is not, ordinarily, admissible to show the contents of the record." 1 Elliott on Evidence, sec. 212.

The plaintiff offered to prove by the same witness what was the testimony of Joseph Buchanan (a deceased kinsman of the plaintiff) in the trial of the other case as to plaintiff's legitimacy, and that it tended to establish the fact. This evidence was properly excluded. It does not appear that the declaration of the deceased relative was made *ante litem motam.* This expression is not restricted to the date of the commencement of the present suit, but to the beginning of the controversy. In order to avoid the mischief which would otherwise result, "all *ex parte* declarations, even though made upon oath, referring to a date subsequent to the beginning of the controversy, are rejected. This rule of evidence was familiar in the Roman law; but the term *lis mota* was there applied strictly to the commencement of the action, and was not referred to an earlier period of the controversy. But in our law the term *lis* is taken in the classical and larger sense of *controversy,* and by *lis mota* is understood the commencement of the controversy and not the commencement of the suit. The commencement of the controversy has been further defined by Mr. Baron Alderson, in a case of pedigree, to be 'the arising of that state of facts on which the claim is founded, without anything more.'" 1 Greenleaf on Evidence, sec. 131. The value of this kind of evidence depends upon its being drawn from an unbiased source, and it should emanate from those in a situation favorable to a knowledge of the truth, and, what is a very important consideration, it should refer to a period "when this fountain of evidence was not rendered turbid by agitation." Section 132. In the same section a very apt illustration, applicable to this case, will be found, for it is there said: "In this case (*Freeman v. Phillips,* 4 M. and S., at page 497), it was observed by one of the learned judges that 'the distinction had been correctly taken that, where the *lis mota* was on the very point, the declarations of persons would

not be evidence; because you cannot be sure that in admitting the depositions of witnesses, selected and brought forward on a particular side of the question, who embark, to a certain degree, with the feelings and prejudices belonging to that particular side, you are drawing evidence from perfectly unpolluted sources.'" 2 Wigmore on Ev., secs. 1482 and 1483; *Westfeldt v. Adams,* 131 N. C., 379. In our case it appears that a controversy existed, as to the plaintiff's legitimacy, at the time of the alleged declaration, when it is supposed that the mind of the declarant was not evenly or nicely poised, but may have been leaning toward one side, with the temptation to exceed or fall short of the truth. The proposed testimony should be free from suspicion. 2 Wigmore, sec. 1482 and notes.

Sam Godfrey, defendant's witness, was permitted to testify, against plaintiff's objection, as follows: "I remember the time of the marriage. Rachel Jane came through my yard that morning and said she had been married that day. Plaintiff was then two or three years old." It was competent for witness to state that he remembered the time of the marriage and that plaintiff was then two or three years old, and as the objection went to the entire evidence, it would fail. *Barnhardt v. Smith,* 86 N. C., 473. In *S. v. Ledford,* 133 N. C., at page 722, we said: "The objections are general, and the rule is well settled that such objections will not be entertained if the evidence consists of several distinct parts, some of which are competent and others not. In such a case the objector must specify the ground of the objection, and it must be confined to the incompetent evidence. Unless this is done, he cannot afterwards single out and assign as error the admission of that part of the testimony which was incompetent. *Barnhardt v. Smith,* 86 N. C., 473; *Smiley v. Pearce,* 98 N. C., 185; *Hammond v. Schiff,* 100 N. C., 161; *S. v. Stanton,* 118 N. C., 1182; *McRae v. Malloy,* 93 N. C., 163. The same rule applies to an objection to the judge's charge, when it consists of several propositions. *Bost v. Bost,* 87 N. C., 477; *Ins. Co. v. Sea,* 21 Wall., 158. Some of the evidence objected to by the defendant was clearly admissible." But waiving this well-settled rule, we think it was competent for the witness to state that

ROLLINS v. WICKER.

Rachel Jane Rollins, plaintiff's mother, who was then dead, told him of her marriage immediately after it occurred. No controversy of any kind had arisen at that time in regard to the plaintiff's legitimacy, and the case shows that what she said was the natural and spontaneous expression of a thought then uppermost in her mind—a mere exclamation, and absolutely free from any suspicion of error or perversion of the truth. There was no motive whatever to falsify the fact. "It has long been the recognized rule to admit declarations of ancestors to prove pedigree, marriage, and heirship. This is considered by some law-writers as an exception to the hearsay rule, and that the exception is founded in the necessity for its admissibility. Ancestry, relationship, and descent are questions which are scarcely susceptible of proof except by what has been said about them by persons in a position to know, not so much the actual kinship one person bore to another, as the kinship which one person said he bore to another, or which one person was reputed to bear to another. But whatever may be the philosophy either of the origin or the growth of the rule, it nevertheless exists under certain limitations. The necessity is said to have arisen from the difficulty of proving such facts many years, and sometimes generations, after they have taken place. Under this rule of necessity, it has been held competent to prove declarations both as to issue and marriage." 3 Elliott on Evidence, sec. 2195 and sec. 2494. In Greenleaf on Evidence (16 Ed.), sec. 114f, it is said that, "The term 'pedigree' embraces not only descent and relationship, but also facts of birth, marriage, and death." Abbott Trial Ev. (2 Ed.), secs. 34, 35 et seq.; Dawson v. Mayall, 45 Minn., 408. The last-cited case holds that in this way the times of those events may be shown. This kind of evidence was said by this Court in Morgan v. Purnell, 11 N. C., 95, to be competent (opinion of Judge Henderson). As to the date of the marriage, the witness said that he remembered the time of the marriage, and that in the morning of the day when it took place the plaintiff's mother passed through his yard and said she had been married that day, and that at that time the plaintiff was three years old. This evidence, as to what she

said, was admissible, as a circumstance to fix in the witness's mind the time to which he referred, as having knowledge of the fact, and to enable him to state whether the plaintiff was then born and, if so, how old she was at that time. He does not say that he acquired his knowledge of the time of the marriage from what Rachel said to him. The fair inference from his testimony is that he then had knowledge of the fact and merely referred to her remark as calling his attention to the fact stated by him, of which he had independent knowledge, and to quicken his recollection as to when he first acquired knowledge of the time of the marriage. In other words, he was reminded by her statement that he had already known of the marriage that day, and that the plaintiff was then three years old. Such a statement is not hearsay, within the proper meaning of that term, but is an original and independent fact, and therefore admissible. *S. v. Fox,* 25 N. J. L., 566; *Harris v. R. R.,* 78 Ga., 525.

The assignments of error cannot be sustained.

No error.