The defendants were engaged in putting up a building for a furniture manufacturing company in Morganton. The plaintiff's intestate was one of the employees. He and seven or eight other men used a derrick in raising and placing heavy pieces of timber in the walls of the building. They had raised and put in position between 75 and 100 pieces, and when the plaintiff's intestate was "riding" one of the timbers the derrick gave way, the timber fell and the intestate was thrown to the ground and injured. He died within a few hours. The plaintiff alleged that the defendants were negligent in the construction and operation of the derrick, that they had failed to secure or anchor it with cables or braces, and that the intestate's death was the proximate result of their negligence.
The defendants filed an answer, and at the trial the following verdict was returned:
1. Was plaintiff's intestate injured and killed by the negligence of the defendants as alleged in the complaint? A. Yes.
2. Did plaintiff's intestate, by his own negligence, contribute to the injury resulting in his death, as alleged in the answer? A. No.
3. Did plaintiff's intestate voluntarily assume the risk of receiving the injury resulting in his death, as alleged in the answer? A. No.
4. What damage, if any, has plaintiff sustained? A. $5,000.
Judgment for the plaintiff and appeal by the defendants.
The plaintiff offered in evidence the intestate's dying declarations as to the cause of his injury. Upon objection by the defendants, the judge granted their counsel a preliminary examination on this point, and in response the witness said: "He (the intestate) told me he could not get well; said a block had done it; said he could not live; told me what to do with his wife and things; said it had killed him; for me to attend to his wife and look after her, and what he had. He asked me then about these other boys, and how many of them were killed. At the time he said he could not get well Dr. Phifer was in *Page 847 
the house — in and out — when he was talking. I do not know if he was near enough to hear what he said — he was out and in — going around there. I could not tell you who was in. We were in a room this way, in the hospital. I don't know if anybody else heard his dying declaration; I could not tell you."
The following evidence was then admitted, and the defendants excepted: "He said the block and chain had hit him here (indicating); said this is what killed me — the block and chain hit him. After he told me he could not get well, he told how the accident occurred. I asked him. He told me when the derrick fell — when he realized it was falling — he said his foreman was jumping — all jumping off; and said, `That was the last I saw of them.' I said, `Mr. Abee was not there,' and he said, `Mr. Hauser was the man looking after it when Mr. Abee was not there.' I said, `I have not heard of it yet; I don't know who was hurt.' He turned his head over from me. At the time the derrick fell, he said they were lifting a piece of timber — him and the foreman was together; then spoke that Mr. Hauser was the man."
At the session of 1919 the Legislature amended section 59 of the Revisal (C. S., 160) by adding thereto the following paragraph: "In all actions brought under this section, the dying declarations of the deceased as to the cause of his death shall be admissible in evidence, in like manner and under the same rules as dying declarations of the deceased in criminal actions for homicide are now received in evidence." Public Laws 1919, ch. 29.
In prosecutions for homicide, the declarations of the deceased, voluntarily made while in extremis, under a sense of impending death, concerning the act of killing, and the facts and circumstances forming a part of the res gestae are admissible, where the deceased would be a competent witness if living. As in homicide, the declarations must be restricted to the act of killing and the attendant circumstances; so, in an action to recover damages for wrongful death, the declarations of the deceased are restricted by the terms of the statute to the cause of the death. S. v. Shelton, 47 N.C. 360; S. v. Mills, 91 N.C. 594; S. v.Jefferson, 125 N.C. 712; S. v. Teachey, 138 N.C. 587; S. v. Bohanon,142 N.C. 695; S. v. Hall, 183 N.C. 806; Tatham v. Mfg. Co., 180 N.C. 627;Williams v. R. R., 182 N.C. 267, 273.
The defendants excepted on the ground that this principle was ignored. They say the declarations were not restricted to the circumstances attendant upon the injury. The reference to Hauser, it will be noted, was a part of the intestate's description of the surroundings under which the injury occurred — a part of the res gestae. The language was this: "At the time the derrick fell, he said they were lifting a piece of timber — him and the foreman was together; then spoke that Mr. Hauser was the *Page 848 
man." Moreover, there was no exception to the specific declaration, "Hauser was the man looking after it when Mr. Abee was not there." Such exception was essential, for a general exception to the admission of evidence will not be considered unless all the evidence objected to is incompetent.Barnhardt v. Smith, 86 N.C. 479; Smiley v. Pearce, 98 N.C. 185; Rollinsv. Wicker, 154 N.C. 559, 563; Phillips v. Land Co., 174 N.C. 542.
Exception was taken to the plaintiff's testimony that he had seen a thousand derricks, and that all, except the one used by the intestate, were equipped with guy wires; and to the testimony of Horace Moses, that the derrick, before the injury, "was shaky — it shook — shook all it could"; that "all other derricks he had seen were different, in that they had guy wires, and that this one did not conform to the rule"; and that "Mr. Dellinger says to me, `Do you want a job?' I said, `Yes, sir.' Mr. Hauser says, `I suppose you can get a job if you want it.' I says, `I don't want a job here; this is dangerous; I hain't ready to die yet.'"
The defendants do not intend, by this exception, to assail the doctrine that it was the duty of the defendants to exercise due care to provide for the intestate reasonably safe appliances with which to do his work, but they say the evidence was not competent upon the question whether they had neglected to perform their duty in this respect. They contend that the apparatus used for hoisting the timber was not such a derrick as is usually supported by guy wires, but an appliance of a different character, and that the admission of the evidence implied its unsafe condition because it was not held in position by cables or braces.
As we understand the record, the evidence was admitted on another theory. In the complaint the appliance was described as a derrick, and the plaintiff contended that even if it fell short of the technical definition, it was spoken of and treated as a derrick during the trial, and, as constructed, was not such as was approved and in general use. In Ainsley v.Lumber Co., 165 N.C. 122, the Court approved the doctrine that the employer's duty with respect to providing for his employees such machinery, implements and appliances as are known, approved and in general use, while peremptory in its terms and effect, is in addition to the more general one of supplying such as are reasonably safe and suitable, and that both are included in the general obligation resting on the employer to exercise the care of a prudent man in looking after the safety of his employees. The use of machinery and appliances which are approved and in general use does not necessarily acquit the master of liability. There are other respects in which he must exercise due care. Hornthal v. R. R., 167 N.C. 627; Dunn v.Lumber Co., 172 N.C. 129; Cook v. Mfg. Co., 182 N.C. 205; Gaither v.Clement, 183 N.C. 451. In this view, the evidence was properly admitted. If the *Page 849 
derrick was not a complicated piece of machinery, its operation involved elements of danger which placed it outside the category of simple tools.
On his cross-examination the plaintiff testified that the intestate, at the time of his injury, "was a strong, healthy young fellow"; and, on the redirect examination, that after being accepted by the board he served in the army four or five months. To the latter evidence the defendants excepted.
It is true that the trial judge should exclude evidence which is foreign to the issues, or insufficient for legitimate use, or illegal as tending only to excite the passion, arouse the prejudice, awaken the sympathy, or warp the judgment of the jury (Shepherd v. Lumber Co., 166 N.C. 130); but here the evidence was confined to the personal knowledge of the witness and was ostensibly admitted, after cross-examination, in explanation and corroboration of his former testimony. In this we see no reversible error. The same principle applies, in our opinion, to the admission of the plaintiff's affidavit and the clerk's order for the examination before the trial of the defendant Abee. The plaintiff testified, on his cross-examination, that he had tried to ascertain from Abee the men who were at work with the intestate when he was injured, and that Abee at first promised to give him their names, and afterwards refused to do so, and that the examination of the defendant was necessary. The judge admitted the affidavit and order, only so far as they tended to corroborate the previous statements of the witness, and was careful to restrict the evidence to this purpose. The affidavit was not read in the presence of the jury, and it was referred to in the argument only to show that an affidavit and order were necessary to get the desired information. The defendants contend that they did not object to proof that the witness had made the affidavit, or attempt to impeach him in this particular, and that the evidence for this reason was not admissible in corroboration. In several respects, however, the witness was impeached. Indeed, this was no doubt the object of the cross-examination. In S. v. Bethea, 186 N.C. 22, it was said: "This Court has often held that whenever a witness has given evidence in a trial, and his credibility is impugned, whether by proof of bad character or by his contradictory statements, or by testimony contradicting him, or by cross-examination tending to impeach his veracity or memory, or by his relationship to the cause or to the party for whom he testified, it is permissible to corroborate and support his credibility by evidence tending to restore confidence in his veracity and in the truthfulness of his testimony. Such corroborating evidence may include previous statements, whether near or remote, and whether made pending the controversy or antelitem motam. Johnson v. Patterson, 9 N.C. 183; S. v. George, 30 N.C. 324;Hoke v. Fleming, 32 N.C. 263; March v. Harrell, 46 *Page 850 850 N.C. 329; Jones v. Jones, 80 N.C. 247; Roberts v. Roberts, 82 N.C. 30;Davis v. Council, 92 N.C. 726; S. v. Brabham, 108 N.C. 793; S. v.Exum, 138 N.C. 600; Cuthbertson v. Austin, 152 N.C. 336; Bowman v.Blankenship, 165 N.C. 519; Belk v. Belk, 175 N.C. 69; S. v. Krout,183 N.C. 804."
Exception was noted to the testimony of Horace Moses that Hauser gave directions or instructions when Abee was absent; that he acted as Abee'salter ego. True, there is no allegation in the complaint that Hauser was vice-principal of the defendants; but there was other evidence, not excepted to, tending to show that Abee was not present when the injury occurred, and that in his absence Hauser was in control. There was also evidence that Hauser temporarily directed the work. To require the plaintiff to set out in the complaint the name of every one placed in authority during the foreman's temporary absence would impose a difficult, if not insuperable, task. Whether Hauser was serving in the capacity of foreman while Abee was absent was a question of fact, and was properly submitted to the jury, under the circumstances disclosed by the record.
His Honor gave this instruction: "The fact that the derrick fell and injured and killed the intestate, if you find that it did fall and injure and kill him, is a circumstance from which you have a right to find or infer that the derrick was in some way defective or insufficient or insecure, and that its fall was due to or caused by some negligence on the part of the defendants."
The defendants excepted, on the ground that the instruction not only withheld from the jury's consideration any evidence of negligence on the part of the plaintiff's intestate or of a fellow-servant, but declared, in effect, that "the thing speaks for itself." They now challenge the application of the doctrine of res ipsa loquitur, and contend that it obtains only where injury is sustained under such circumstances as logically tend to establish negligence.
In Saunders v. R. R., 185 N.C. 289, the doctrine is discussed and the distinction drawn between cases in which the machinery or appliance is under the management of the employer and those in which it is not. Several cases are there cited, among them Womble v. Grocery Co., 135 N.C. 474, in which the falling of an elevator was held to be evidence of negligence, the Court applying the principle stated in Ellis v. R. R., 24 N.C. 138, that, "Although the burden is on the plaintiff to show negligence causing damage, when he shows damage resulting from the act of the defendant, which act, with the exertion of proper care, does not ordinarily produce damage, he makes out a prima facie case of negligence." Undoubtedly, the falling of the elevator was evidence of negligence in its construction, maintenance or operation. The jury *Page 851 
were permitted to determine whether the defendants were negligent and whether their negligence was the proximate cause of the intestate's injury and death. The correctness of the instruction was in no way impaired by evidence tending to show negligence on the part of the intestate or his fellow-servants.
We have given careful attention to the remaining exceptions, and have been unable to find any error which entitles the defendants to a new trial.
No error.