BYNUM SPAUGH ET AL. V. A. J. HARTMAN ET AL.

(Filed 14 April, 1909.)

1. Inheritance—Slaves—Legitimatizing Children—Heirs at Law.

The efficacy of the act of 1879 (Revisal, sec. 1556), legitimatizing the children of colored parents, under certain conditions, living together as husband and wife, and thus giving them the rights of inheritance, depends upon two essential facts—a cohabitation subsisting at the birth of the child and the paternity of the person from whom the property claimed is derived.

2. Same—Cohabitation.

In order to come within the provision of the act of 1879 (Revisal, sec. 1556), legitimatizing the children of colored parents living together as man and wife, etc., and thus giving them the rights of inheritance, an exclusive cohabitation must be shown, as signified by the expression, "living together as man and wife," and not casual sexual intercourse.

3. Marriage—Slaves—Legitimatizing Children—Evidence—Acts and Declarations.

The *quasi* marriage relation necessary to legitimatize the children of colored parents, under the provisions of the act of 1879 (Revisal, sec. 1556), may be shown in evidence by reputation, cohabitation, declarations and conduct, under the same general rule of evidence applicable to establish the fact of marriage. (*Nelson v. Hunter*, 140 N. C., 599, cited and approved.)

ACTION to recover land, tried before *Long, J.,* and a jury, at November Term, 1908, of DAVIDSON.

The case was made to turn upon the finding of the jury upon this issue, submitted by consent: "Are the plaintiffs the heirs of Wesley Delap and entitled to the possession of the lands described in the complaint?" Answer: "No."

The plaintiffs moved for a new trial, assigning errors. Motion denied. Plaintiffs excepted and appealed from the judgment rendered.

*Walser & Walser* and *McCrary & McCrary* for plaintiffs.
*Emery E. Raper* for defendants.

BROWN, J. The land in controversy was devised by Alex Delap to James Wesley Delap (colored), who had been his slave.

Upon the death of the testator the said devisee entered into possession and remained there until he died, intestate, in 1906. The defendants then entered upon the lands and have remained there since, claiming as heirs of Alex Delap. The plaintiffs claim the lands as the children of Calvin Delap, who, it is alleged, was the son of Wesley Delap and his "slave wife," Martha Spaugh. Calvin was born of said Martha about 1853, and it is contended that Wesley Delap was his father, acknowledged the paternity, and, at the time the child was born, was living with its mother in the relation of husband and wife, and that in consequence thereof such issue became legitimate and capable of inheriting from either parent, under the act of 1879, now Rule 13, Descents. Revisal, sec. 1556.

There was much evidence introduced by plaintiffs tending to establish the affirmative of the issue.

These questions were put by plaintiffs' counsel to witness Manuel Spaugh and excluded by the court, to which ruling the plaintiffs excepted:

"State what the general reputation as to who Martha Spaugh's husband was, and who Wesley Delap's wife was, relative to slave relations.

"Did or did not Martha and Wesley live together as man and wife, as was custom amongst slaves at and before the time of the begetting and birth of Calvin Spaugh?"

The act of February, 1879, adds to the canons of descent by legitimatizing the children of colored parents born at any time before the first day of January, 1868, of persons living together as husband and wife, and confers upon such children all the rights of heirs at law or next of kin with respect to the estate of such parents or either of them. Its efficacy depends upon two essential facts to be established—a cohabitation subsisting at the birth of the child and the paternity of the person from whom the property claimed is derived.

The cohabitation meant by the statute is not casual sexual intercourse, but an exclusive cohabitation, such as is usually signified by the words "living together as man and wife." *Branch v. Walker,* 102 N. C., 35. While the marriage of slaves was not recognized as a legal bond, it is well known that in number-

less instances the marriage relation was assumed by them, and to all intents and purposes, except in law, they became man and wife, and the appellation of "husband and wife" was used in reference to the parties to such unions by their owners and their associates.

. By the common law it is held to be a general rule of universal application in civil cases, except in actions for criminal conversation, that reputation, cohabitation, the declarations and conduct of the parties are competent evidence to prove that the marriage relation subsisted between them. *Archer v. Haithcock,* 51 N. C., 421; *Jones v. Riddick,* 79 N. C., 291; *Weaver v. Cryer,* 12 N. C., 337.

We are of opinion that the same rule of evidence should apply in proving that the *quasi* marriage relation referred to in the statute existed between slaves. It is not the legality of such a relation that is an issue in this case, but only the fact that such a relation was assumed by the putative grandparents of the plaintiffs.

The syllabus in the case of *Nelson v. Hunter,* upon a rehearing (144 N. C., 763), would appear to sanction the ruling of his Honor; but an examination of the case will disclose nothing inconsistent with our present ruling. 140 N. C., 599. The facts of that case were that a marriage ceremony was performed, during the war, between Solomon Nelson and Jackie Cook, and the evidence tended strongly to prove that the relation thus assumed continued to exist until after the act of 10 March, 1866, had legalized it, and that the plaintiff Nelson claimed the property of his mother, Jackie, as her only legitimate child, the product of that union. For the purpose of showing that the relation of Solomon with Jackie was not exclusive and not that of husband and wife, it was sought to be proven by general reputation that Solomon, some time in 1867, abandoned Jackie and lived with a female of color, named Viley, in Beaufort County, with whom he had lived prior to the war. The court held that the general reputation that Viley was Solomon's wife before the war, and her declarations claiming him as her husband, were valueless and incompetent, saying in reference thereto: "If Solomon resumed his cohabitation with Viley after the passage of

the act of 10 March, 1866, it could have no effect upon the legitimacy of his and Jackie's children. If his relations with Jackie continued long enough to have become legalized by the act, his conduct after that could not render the offspring of that union illegitimate." 140 N. C., 601. There was no purpose in that case to prove a slave marriage between Solomon and Viley, nor was there any issue of their cohabitation. Neither is the case of *Erwin v. Bailey*, 123 N. C., 632, authority for the defendant's contention. It was there held that general reputation that the plaintiff was not the child of Cæsar Swinton was properly excluded, with which ruling we fully agree. It was an attempt to prove illegitimacy by general reputation.

We think his Honor erred in excluding the evidence.

New Trial.