CORA HALL AND LILLIE SPELLMAN, BY HER NEXT FRIEND, v. JOSHUA FLEMING.

(Filed 3 October, 1917.)

1. **Descents—Slaves—Statutes.**

    In order for a child of a deceased slave to inherit the real estate of his father under chapter 30, Rule 13 of Descents of the Revisal, the paternity of the child must be shown, and that of the parents of the claimant, prior to January, 1868, lived together as man and wife and with exclusive association.

2. **Same—Customs.**

    The inquiry as to whether slaves who have intermarried have continued to live together exclusively as man and wife, so as to transmit the inheritance of real property to their children as recognized by Rule 13 of Descent, Rev., sec. 1556, involves the consideration of the customs existing at the time, permitting, in certain instances, marriage with others, when one of the parties has been sold and moved to a distant locality; and upon evidence tending to show that a claimant to real property owned by the father has been born of the first marriage, and that so far as conditions and customs permitted, the slave and his wife continued to live together

as man and wife, it is reversible error for the trial judge to nonsuit the plaintiff upon the ground that the parent had remarried prior to 1868 in accordance with the custom then existing.

### 3. Same—Paternity—Evidence.

When an inheritance is claimed by the son of a slave marriage prior to 1868, from the father, the declarations and conduct of the father, since deceased and made *ante litem motam*, are competent upon the question of paternity, if such facts tend naturally to establish the relationship as claimed.

SUIT for sale of land for partition, transferred to Civil Issue Docket and tried before his Honor, *M. H. Justice, J.,* and a jury, at June Special Term, 1917, of PASQUOTANK.

It appeared that the property described in the petition belonged to Joshua Fleming, deceased, who was a slave before the termination of the Civil War. Plaintiff, Cora Hall, claimed that she was a daughter of Joshua Fleming, born to him before January 1, 1868, by an alleged wife, Judith Carey, and that she was entitled, as heir, to a portion of her deceased father's property, under Rule 13 of our Statute of Descents, Revisal, chap. 30. Defendant, Joshua Fleming, Jr., was one of eight children of said Joshua, Sr., by his wife, Elizabeth Norcum, all admitted to be heirs at law, and whose interests in the property were held by defendant, Joshua, Jr., except that of Lillie Blanch Spellman, an infant child of a deceased daughter, who sues by her next friend.

Plaintiff, Cora Hall, and this grandchild instituted these proceedings, alleging that they were tenants, in common with defendant, of the land in question. Defendant, admitting that he was tenant in common with Lillie Spellman, the grandchild, denied that Cora Hall had any interest in the property.

On the trial, there was evidence on the part of plaintiff tending to show that Joshua Fleming, deceased, and Judith Carey were slaves before the war; that Joshua lived at Bolling Hall, owned by Colonel Bolling, and Judith at Judge Leak's, a few miles off; that they were married in the year 1854 and lived together as man and wife for two or more years, till Joshua was sold and moved to Edenton, N. C., and that while they lived together as man and wife, Cora, one of plaintiffs, was born; that they were married by a minister of the gospel; that Joshua Fleming called Cora his daughter, and Judith Carey was later married again in Virginia.

At the close of the testimony, on motion, there was judgment of nonsuit, and plaintiff, Cora Hall, excepted and appealed, assigning for error said order of nonsuit, and also the exclusion of certain evidence offered by plaintiff, his Honor's ruling thereon having been duly excepted to, as follows:

"Exception 1. Florence Bright, admitted to be one of the children by his wife, Elizabeth, was asked: 'Did you ever hear your father say anything about any other marriage?' She would have testified that she heard her father say that he was married before the war, in Virginia, to Judith Carey, and was living with her as his wife and had one child, Cora Hall; that he was a slave at the time and was sold and removed to North Carolina.

"Exception 2. 'Do you know anything about your father claiming Cora Hall as his daughter?' The plaintiff would have proved by the answer to this question that the witness heard her father say on more than one occasion that Cora Hall was his child by his first wife.

"Exception 3. 'When she came to visit you, how was she received by your father, Rev. J. A. Fleming?' The witness' answer to this would have been that Cora Hall visited Joshua A. Fleming in 1886 in Elizabeth City and at other times; that he treated her as his child, calling her daughter, and told his children that she was his daughter by his first wife.

"Exception 4. Primus Williams, a witness for the plaintiff, was asked: 'Did he (J. A. Fleming) claim her (Judith Carey) as his wife, exclusively?' He would have answered, 'Yes.'

"Exception 8. The plaintiff, Cora Hall, was asked: 'When he introduced those people to you and your mother, what did he say?' The plaintiff would have proved by the answer to this that he took his son-in-law and several friends to the home of her mother and introduced them to her as his first wife.

"Exception 10. John Gregory, a witness for the plaintiff, was asked: 'Did you ever hear Joshua A. Fleming say what relation Cora Hall was to him?' Plaintiff would have proved by this witness that Joshua A. Fleming stated to him that Cora Hall was his daughter by his first wife."

*Aydlett & Simpson for plaintiff.*
*Ward & Thompson for defendant.*

HOKE, J. Our Statute of Descents, Revisal, chap. 30; Rule 13, provides "That the children of colored parents, born at any time before the first day of January, 1868, of persons living together as man and wife, are hereby declared legitimate children of such parents, or of either one of them, with all the rights of heirs at law and next of kin with respect to the estate or estates of any such parents or either one of them," etc.

There was evidence admitted tending to bring the case of this claimant, Cora Hall, directly within the provisions of the statute, and, on the record, we are of opinion that the order of nonsuit should be set aside.

True, as contended by defendant, the Court has held in several decisions that, in order to the operation of the statute, the paternity of the

child must be shown, and that the living together by the parties as man and wife must have been an exclusive association. *Spaugh v. Hartman,* 150 N. C., 454; *Branch v. Walker,* 102 N. C., 35.. But these decisions and the statute itself must be interpreted and construed in reference to the terms employed and the facts and conditions presented and which they were intended to regulate and control.

We know that, while persons in slavery were allowed to go through the forms of mariage and to live in that association, it was not regarded as a full and perfect marriage, but, under the system, was subject to the paramount rights of ownership; and when a slave who had so married was sold or removed by his owner to a distant locality, involving a physical separation, the parties were allowed to marry again, and it was usual and customary for them to do so. In holding, therefore, that this association must be exclusive, it was not at all intended that it should be enduring or in strict personal fidelity while it continued. *Croom v. Whitehead, post,* 306. If it was exclusive during the period covered by the association, a child born during such association would come within the meaning and purpose of the law. We know, further, that not infrequently the slaves of different owners were allowed to enter on these marriages, and when they did so, it was customary for the man to visit and associate with his wife at stated periods, and when this custom was followed, it should properly be considered "a living together as man and wife," as contemplated by the statute; and, as heretofore stated, there was testimony received tending to show that such a marriage took place between Joshua Fleming, deceased, and a former wife, Judith, mother of Cora Hall; that they lived together as husband and wife, and the claimant was born to them during such association; and if these facts are accepted by the jury, it would establish her right to inherit her portion of her father's property.

Again, it is the accepted principle that, in questions of pedigree and race ancestry, the declarations of deceased relatives made *ante litem motam* may be received in evidence, and that such testimony is not always restricted to the expressed declarations of the parties, either oral or written, but under ctrtain circumstances, may be extended to include treatment and conduct of parties towards each other, where such facts are relevant and tend naturally to establish the relationship as claimed. *Ewell. v. Ewell,* 163 N. C., 233; *Rollins v. Wicker,* 154 N. C., 559; *Walker v. Walker,* 151 N. C., 164; *Gilliland v. Board of Education,* 141 N. C., 482; *Moffitt v. Witherspoon,* 32 N. C., 185; Jones on Evidence (2d Ed.), sec. 312. Under these decisions, and the principle they uphold, we think the evidence offered should have been received, and, for the errors indicated, the judgment of nonsuit as to Cora Hall must be set aside and her cause referred to the decision of the jury.

Reversed.